Timothy OLIVER *v.* STATE of Arkansas

92-1071 851 S.W.2d 415

Supreme Court of Arkansas
Opinion delivered April 5, 1993

*Reece Law Firm,* by: *Dana A. Reece,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Teena L. White,* Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This is an appeal from the denial of a motion to transfer a capital murder case to juvenile court. We find no merit to the appeal.

On March 27, 1992, appellant Timothy Oliver, aged fifteen, was arrested and charged with two counts of capital murder, along with three others, all codefendants. The charges arose from the brutal slaying of the parents of one of the codefendants in which all four youths participated. The couple was found dead in the bedroom of their DeQueen home on March 24 after reports that neither had been seen for several days. The police went to the couple's home and found them slain in their bed, both victims of bludgeoning and multiple stab wounds.

The son of the couple gave a confession of his involvement on March 25, 1992, and implicated his three friends, including Oliver. Oliver was interviewed on March 26 and gave a confession which detailed his involvement in the murders. Oliver's account of the murders included the following excerpt:

Sometime back, Mike Friend talked to me, George

Rhoades and Rickey Dawson about wanting to kill his Dad. Mike has talked to all of us at different times about how to kill his stepfather. We have talked about using poison and shooting him.

Friday night, March 20, 1992, we were at George's house talking about going to DeQueen Saturday night. Saturday afternoon we were at George's house. We talked about how we were going to kill him and what everyone was going to use.

I decided I would use the ball bat, George would use some type of two-bladed knife, sharp on both sides. Rickey was going to use a large stick about the length of a baseball bat and Mike was going to use an aluminum sword or practice sword. It was only sharp on the end.

We all loaded up in George's truck and went to DeQueen. We hadn't been smoking or using any drugs or drinking. We got to DeQueen and me and George got out at the skating rink. Mike and Rickey were in the truck riding around. Around 11:00 p.m. Mike and Rickey picked me and George up. We all went to the Pizza Hut and had a pizza. After we left the Pizza Hut we went straight to Mike's house.

On the way out there Mike told everyone what he wanted them to do. Mike had already told us in Hot Springs that his Father had $3000 in his billfold and he would split the money with us to help kill his Dad.

Mike told us he would go into the house first because he knew his Dad had a gun under the mattress and he would keep him from getting it.

Mike went in the house first, then George, then me and Rickey last. Mike went to his Father's side of the bed, I was behind Mike. George was at the end of the bed by the Mother's side and Rickey was at the end of the bed. Rickey turned the light on and Mike started stabbing his Dad with the sword as fast as he could. The end of the sword bent. His Dad raised up and I hit him in the left side of the head above his eye. Mike took the bat from me and hit his Dad in the head. I got the bat back and hit him in the head three

more times while his head was laying on the nightstand. Rickey took the bat from me and hit the lady with it. She was face down when Rickey hit her. George hit the man in the head with the bat also before Rickey took the bat. I saw Rickey hit the lady twice with the bat. I guess George cut her throat because he had talked about it before we got to the house and he had the razor-blade or whatever it was.

■ As a fifteen-year-old charged with capital murder, it was at the prosecutor's discretion whether to charge Oliver as a juvenile or an adult, Ark. Code Ann. § 9-27-319(b) (1987). In this case Oliver was charged as an adult, and Oliver then moved to transfer the case to juvenile court under Ark. Code Ann. § 9-27-318(d) (1987). A hearing on the transfer was held on May 20, 1992, and Oliver's motion was denied. He brings this interlocutory appeal under the authority of § 9-27-318(h).

Oliver does not dispute the trial court's refusal to transfer. Rather, he argues the trial court erred in denying a motion for a continuance he had made prior to and again at the hearing to obtain psychological testing. He insists that because the court failed to grant the continuance he was prevented from presenting evidence of rehabilitation potential and character traits that the court may consider in a transfer hearing under § 9-27-318.

We first note that the request below was not for a continuance for general psychological testing, as appellant argues on appeal, but for a continuance to raise funds from appellant's family for a private psychologist to administer intelligence and achievement tests.

On April 30, 1992, Oliver filed a motion for state funds to pay for a psychologist for the purpose of "assistance of a psychologist to perform IQ testing and other achievement tests." On May 14, 1992, Oliver filed a second motion in regards to the upcoming May 20th transfer hearing, requesting a continuance because "additional time is needed for a psychological evaluation of defendant prior to said hearing." Neither of the motions was ruled on prior to the May 20th hearing.

At the May 20th hearing appellant addressed both motions and in the first, stated:

Ms. Jones: Your honor, on behalf of Mr. Oliver, I have

filed a motion for assistance of an expert. Your Honor, *we are requesting funds,* since this defendant is indigent, *to be able to hire a psychologist to do IQ testing and perform other achievement tests of Mr. Oliver.* [Our emphasis.]

The Court responded:

. . . As far as a psychologist, if they want to be examined we'll send them to the state psychologist at the state hospital if you want to make a motion to have them examined by the psychologist.

Ms. Jones: Then at this time, your honor, are you denying my—

Court: Yes.

Ms. Jones: —request for a private psychologist?

Court: I am.

Ms. Jones: Your Honor, then I have also filed a motion for a *continuance asking for additional time to gather — to visit with Jr. Oliver's family to see if funds could be raised with the family to get a psychological examination from a private psychologist and we would like to have that information, your honor, before we proceed with the motion to transfer hearing that is scheduled today.* [Our emphasis.]

Court: I'm going to deny that motion, too.

From that context of the hearing it appears the request for the psychologist was *not* for the purpose of testing for character traits and rehabilitation potential but for testing appellant's intelligence through IQ and achievement tests. It was also evident that the continuance was not for the psychological testing itself, but for time to raise money from appellant's family for private testing.

■ An appellant may not change the basis for his argument or raise a new argument on appeal, but is limited to what was requested in the trial court. *Harris* v. *State*, 295 Ark. 456, 748 S.W.2d 666 (1988). The issue on appeal then is whether the trial court erred in denying a continuance to allow appellant time to raise money from his family for the purpose of hiring a private

psychologist to administer IQ and achievement tests.

■■ The burden is on the movant to show good cause for a continuance. Arkansas R. Crim. P. 27.3. A motion for continuance is addressed to the sound discretion of the trial court and the court's discretion will not be reversed absent a clear abuse of the discretion. *David* v. *State*, 295 Ark. 131, 748 S.W.2d 117 (1988). The burden of proving prejudice and an abuse of discretion rests on the appellant. *Kelly* v. *State*, 261 Ark. 31, 545 S.W.2d 919 (1977); *David* v. *State, supra.*

■ The court considers several factors in considering whether a continuance should be granted, including: 1) diligence of the movant; 2) probable effect of the testimony; 3) relevance of the testimony; and 4) the likelihood of procuring the evidence or witness sought. *Touvell* v. *State*, 299 Ark. 375, 772 S.W.2d 347 (1989). We have not given equal weight to these factors, but have considered them in the context of the facts of each case. *See* e.g. *Touvell* v. *State, supra*; *Mann* v. *State*, 291 Ark. 4, 722 S.W.2d 266 (1987).

■ This case is similar to *Touvell* v. *State, supra*, where we found the factors weighing most heavily were the relevance of the evidence and the probable effect of the testimony. As in *Touvell*, there was other evidence here that made the information appellant was seeking by way of continuance merely cumulative. There was evidence of appellant's general intelligence level and achievement levels through the testimony of his school counselor and the school's records of appellant's grades and standardized testing over the last three years. We believe these tests were sufficient to apprise the court of appellant's intellectual and scholastic abilities for purposes of the transfer issue. Appellant has not shown how greater development of this sub-issue would have been helpful to the judge. Further, appellant did not apprise the court of the likelihood of securing funds from appellant's family nor how long such a project might take. There was no showing that it could have been accomplished speedily while this capital murder trial remained pending.

In light of the fact that the court offered testing through the state hospital, which appellant has not argued would be inferior to private testing, there has been no showing of an abuse of discretion by the trial court nor any prejudice resulting from the

denial of a continuance.

Finally, we note trial court's offer to appellant at the close of the hearing:

> Court: I'll leave the record open in this case until you file your notice of appeal . . . to allow you any additional testimony, but I'm make the ruling today, denying your motion to transfer, but I'll leave the record open until you file your notice of appeal . . . which I guess would be thirty days. I don't know. If you have any additional evidence to submit between now and the time your notice of appeal is filed, I'll give you a speedy hearing in whatever county I happen to be holding court in.

The court in effect gave appellant additional time and there is nothing in the record to show this was utilized.

Affirmed.