Anthony Antonio HART *v.* STATE of Arkansas

CR 92-1414                                    852 S.W.2d 312

Supreme Court of Arkansas
Opinion delivered April 26, 1993

*William R. Simpson, Jr.*, Public Defender, by: *Thomas B. Devine III*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant was found guilty of capital murder and sentenced to life in prison without parole. He appeals and, in his only point of appeal, argues that the trial court erred in refusing to suppress his confession. We affirm the ruling of the trial court on the point. Pursuant to Rule 11(f) of the Rules of the Supreme Court and Court of Appeals, under which the Attorney General must "brief . . . any other points that appear to . . . involve prejudicial error," the State additionally questions whether the trial court's ruling admitting the confession into

evidence violated A.R.Cr.P. Rules 2.2 and 2.3. We hold the ruling of the trial court did not constitute reversible error. Since appellant was sentenced to life in prison without parole, an examination has been made of all objections decided adversely to appellant pursuant to Rule 11(f), and, pursuant to that review, there was no prejudicial error in the trial. Accordingly, we affirm the judgment of conviction.

Since the sufficiency of the evidence is not questioned, we set out only the evidence that is necessary to understand the issues on appeal. On Sunday, April 7, 1991, at 11 a.m., Mary Croom's corpse was discovered at her home on East Sixth Street in Little Rock. It was obvious that she had been murdered because the corpse had forty stab wounds, and a large butcher knife with a white handle remained impaled in the corpse's torso. The police immediately began to check the neighborhood for information. The victim's sister, Bertha Jackson, thought a television set and some meat were missing from the victim's home. O.D. Kirkland stated that on the previous Tuesday he took the victim shopping, and she purchased a ham. When they returned to his house from the grocery store, the victim asked to borrow his hacksaw and white-handled butcher knife so that she could go to her home and cut up the ham. Appellant, who was standing nearby, offered to assist her in cutting up the ham. The two left together to go to the victim's home with the hacksaw and white-handled butcher knife to cut up the ham. O.D. Kirkland also told the detective that two days later, on Thursday, appellant came back by his house and sold him some meat and offered to sell him a television set.

The two detectives investigating the murder were told that appellant could be found at his grandmother's house. They went there, and while they were there, appellant phoned his grandmother. One of the detectives spoke to him and told him that they wanted to ask him some questions. Appellant responded that he was at work, but they could come to his place of employment and talk to him. The detectives drove to appellant's place of employment, found him, and asked if he would come to the police station to answer some questions. Appellant was not placed under arrest at the time, but neither of the detectives told appellant that he did not have to go with them. They got to the police station at about 3:00 or 3:30 in the afternoon, which was only four hours after the corpse had been found.

At the police station appellant was given a *Miranda* warning. He said he understood his rights and he waived them. He did not appear to the officers to be intoxicated, and they testified that at the time he appeared to be aware of his rights and the consequences of his decision to abandon them. While a subsequent test of his intelligence quotient measured 80, or comparatively low, he had completed high school. He was twenty-seven years of age, could read and write, and was familiar with the process since he had four prior convictions. He signed a waiver-of-rights form at 3:40 p.m. He told the detectives that they could find some evidence at 1512 Hangar Street in Little Rock. The detectives left the station to go to the address, but were never able to find such an address. While they were gone they left appellant unrestrained in an unlocked interview room. They did not tell appellant he was free to leave. The detectives returned to the station in about an hour, and appellant was still waiting in the interview room. About an hour later, at 5:45, appellant was reminded of his rights, but they were not repeated verbatim, and was asked if he understood his rights. He responded that he did and that he had signed the waiver form. Appellant then confessed to the murder and said he committed it so that he might take something of value from the victim's house and sell it in order to buy drugs. The confession was made within seven hours of the discovery of the corpse.

Appellant argues that the trial court erred in refusing to suppress the confession because the police did not "re-*Mirandize*" him at the time the confession was taken. The argument is without merit for two reasons. First, factually, while a new rights form and waiver-of-rights form were not executed at 5:45, the time of the confession, appellant was reminded of those rights and asked if he understood those rights. He responded that he did. Second, legally, there is no requirement that *Miranda* warnings be repeated each time a suspect is questioned. *Wainwright* v. *State*, 302 Ark. 371, 790 S.W.2d 420, *cert. denied*, 111 S. Ct. 1123 (1990).

Appellant also argues that his confession should have been suppressed because it was not knowingly and intelligently given since a test of his intelligence quotient revealed a low intellect. In determining whether a suspect made a knowing and intelligent abandonment of his Fifth Amendment privilege and

Sixth Amendment right to counsel, a trial court must look at the totality of the circumstances to determine whether the waiver was made with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. This inquiry necessarily includes an evaluation of the defendant's age, experience, education, background, intelligence, whether he has the capacity to understand the warnings given him in light of the nature of his Fifth, Sixth, and Fourteenth Amendment rights, and to understand the consequences of waiving those rights. *Mauppin* v. *State*, 309 Ark. 235, 831 S.W.2d 104 (1992). A low score on an intelligence quotient test does not necessarily mean the suspect is without the requisite level of comprehension to knowingly and intelligently waive his rights. *Lowe* v. *State*, 309 Ark. 463, 830 S.W.2d 864 (1992). The trial court heard the testimony in this case and considered appellant's age, his ability to read and write, his educational background, his comprehension level and, from that testimony, concluded that the waiver was made with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon those rights. On appeal, we reverse only if that finding was clearly erroneous. *Id.* The trial court's finding was not clearly erroneous.

■ Appellant makes an additional argument about the voluntariness of his confession. He argues that, because he was held in an interrogation room for two hours and was not told he could leave, his statement was not voluntarily given. He does not contend that any force or threats were used, or that he was incarcerated during this two-hour period, or that the police acted in any threatening manner. Rather, he argues that the police did not clearly inform him that he was free to leave the interrogation room while they were gone, and, therefore, the two-hour wait rendered the confession involuntary. This court has held that the fact that a defendant was not told that he had no legal obligation to accompany detectives to the police station does not render an interrogation coercive. *See Pace* v. *State*, 265 Ark. 712, 580 S.W.2d 689 (1979). By analogy, the fact that appellant was left alone in an unlocked interrogation room for two hours does not, of itself, render a waiver of rights involuntary. Under all of the circumstances, we cannot say that the trial court erred in refusing to suppress the confession. In sum, there is no merit in appellant's

point of appeal.

The Attorney General, pursuant to his duties under Ark. Sup. Ct. R. 11(f), sets out a potential error. It involves a violation of A.R.Cr.P. Rules 2.2 and 2.3.

Rule 2.2 states that a law enforcement officer may request any person to cooperate with an investigation by responding to questions, appearing at a police station, or complying with any other reasonable request. Rule 2.3 provides that when a law enforcement officer requests someone to accompany him to the police station, he shall make it clear that "there is no legal obligation to comply with such a request." The detectives did not tell appellant that he did not have to go with them to the police station. Since the detectives did not comply with the rule, there was a seizure of the appellant and a violation of his rights under the Fourth Amendment unless the detectives had probable cause to arrest him. *Burks* v. *State*, 293 Ark. 374, 738 S.W.2d 399 (1987). Probable cause exists where reasonably trustworthy information of facts and circumstances within the officers' knowledge would lead a person of reasonable caution to believe that a felony was committed by the person detained. *Id.* at 377, 738 S.W.2d at 401.

The facts known by the detectives at the time appellant went to the police station were such as would lead a person of reasonable caution to believe that the murder had been committed by the appellant. They had reasonably trustworthy information that the appellant and the victim left O.D. Kirkland's house and went to the victim's home and that they took with them a large, white-handled butcher knife and a ham. They knew that the victim's corpse was discovered at her home with a large, white-handled butcher knife impaled in it. They had reasonably trustworthy information that the meat and a television set were missing from the victim's home. They also had reasonably trustworthy information that appellant sold some meat and attempted to sell a television set. This information was such as would lead a person of reasonable caution to believe that the murder had been committed by appellant. Consequently, there was probable cause to arrest appellant, and the violation of A.R.Cr.P. Rule 2.3 becomes immaterial.

Affirmed.