Everett Lawrence KING *v.* STATE of Arkansas

CR 93-266                                    862 S.W.2d 229

Supreme Court of Arkansas
Opinion delivered September 20, 1993

*Huggins & Huggins*, by: *Joel O. Huggins*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clementine Infante*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Everett King was found guilty of delivery of a controlled substance and possession of a controlled substance with intent to deliver. He was sentenced to 36 years in the Department of Correction. He appeals his conviction on two grounds: (1) the trial court erred in refusing to grant a motion to suppress evidence seized following a search of his home; and (2) the trial court abused its discretion by failing to grant a motion for continuance of the trial. Neither point has merit, and we affirm the convictions and sentences.

The facts are these. In December 1991, Jeffery Kragel, who later became a confidential informant, was arrested by the Fayetteville police for delivery of marijuana. Following the arrest, he agreed to cooperate with the Fayetteville police in making a drug buy in order to minimize problems for himself and his wife. He called the home of Everett King, spoke to him, and arranged to purchase one-quarter pound of marijuana. After Kragel completed the arrangements, the police searched Kragel and his car. Kragel was then given $500 of photocopied Drug Task Force funds and outfitted with a body mike. Detective Allen McCarty of the Fayetteville Police Department testified that Kragel was then kept under surveillance as he drove to a brown and white trailer in Sonora outside of Springdale. McCarty observed Kragel pull into the driveway and exit his car.

Kragel was met on the porch by an unidentified person, and the two entered the house. Detective McCarty testified that he heard the conversation inside by way of the body mike but admitted that parts of the conversation were inaudible. He testified that he overheard what appeared to be a drug transaction. McCarty stated that he and a companion officer, Scott McElveen, drove by the King residence as Kragel got into his car. They then followed Kragel a short distance away to Spe-Dee Mart where he stopped and turned over a quarter pound of

marijuana to the officers. The officers then followed Kragel back to the Fayetteville Police Department where the body mike was removed. The police searched Kragel and his car and found no drugs or money.

The transcript of the tape resulting from conversations overheard by means of the Kragel body mike indicates that Kragel stated that he saw no other drugs in the King trailer. However, Kragel and McCarty testified at the hearing before the circuit court that Kragel told the officers at Spe-Dee Mart that he saw about 60 small-growing marijuana plants at the trailer. He also testified at the hearing that a woman named Charlotte and another man were present at the house as well as King. King, he stated, actually sold him the marijuana.

Based on this information Officer McElveen prepared a search warrant and affidavit in support of the warrant. At midnight, McElveen presented both documents to Springdale Municipal Court Judge Stanley W. Ludwig. Judge Ludwig signed the warrant for a nighttime search of the King trailer. The police executed the search warrant and found approximately five to seven pounds of marijuana, approximately sixty marijuana plants, and numerous items described as drug paraphernalia. Police also recovered a loaded 30/30 caliber rifle. King was arrested and charged with possession of a controlled substance with intent to deliver; manufacturing marijuana; delivery of a controlled substance; and felon in possession of a firearm.

A motion to suppress the evidence obtained pursuant to the search warrant was filed, and at the hearing before the circuit court Kragel, the participating officers, Judge Ludwig, and King's wife testified. The circuit court denied the motion.

Following a jury trial, King was found guilty of delivery of a controlled substance and possession of a controlled substance with intent to deliver. He was acquitted of drug manufacturing and the firearm charge. He was sentenced to consecutive terms totalling thirty-six years.

### I. SUPPRESSION

For his first argument, King challenges the sufficiency of the affidavit underlying the search warrant. Our standard of review for a denial of a motion to suppress evidence is well

established. We make an independent examination based on the totality of the circumstances and reverse the circuit court's decision only if it was clearly against the preponderance of the evidence. *Watson* v. *State*, 308 Ark. 643, 826 S.W.2d 281 (1992); *Ryan* v. *State*, 303 Ark. 595, 798 S.W.2d 679 (1990); *Edwards* v. *State*, 300 Ark. 4, 775 S.W.2d 900 (1989). On appeal we view the facts most favorably to the State as appellee. *Holden* v. *State*, 290 Ark. 458, 721 S.W.2d 614 (1986).

King's argument for suppression is premised on his assertion that there were several statements contained in the underlying affidavit that were false and misleading. The alleged misstatements are these:

### STATEMENT 1

On December 18, 1991, Detective McCarty was contacted by a confidential informant, who advised him that the resident of the aforementioned house, Everett King, had a quantity of marijuana for sale. [King argues that Kragel was arrested on a drug charge and agreed to cooperate only because of that.]

### STATEMENT 2

At approximately 10:55 p.m., the confidential inform-ant met with Detective McCarty and Detective McElveen at the Fayetteville Police Department. [King disputes the word "met" because King was an involuntary informant.]

### STATEMENT 3

Detectives McCarty and McElveen . . . overheard the confidential informant purchase approximately one quarter pound of marijuana from Everett King. [King argues that a precise marijuana buy could not be overheard since no mention of marijuana was made.]

### STATEMENT 4

The confidential informant was then interviewed and indicated that he/she had observed approximately sixty seedling marijuana plants in the living room of King's trailer. [King points out that on the tape Kragel said, "I didn't see any other than what he gave me," and that the

plants were not found in the living room.]

## STATEMENT 5

[The confidential informant] was kept under constant surveillance by Detectives Lovett and Owens . . . . [King says the surveillance was intermittent.]

King continues that under the Supreme Court decision of *Franks v. Delaware*, 438 U.S. 154 (1978), a hearing is required to be held on allegations of intentionally false statements, or statements made in reckless disregard of the truth, in the warrant affidavit. If falsity is established, then those items must be carved out of the affidavit, and the remainder of the information must suffice to establish probable cause.

The State takes issue with the appellant's argument under *Franks* and vigorously contends that King did not follow the correct procedure under that decision. Specifically, the State argues that King never presented the circuit court with preliminary proof of material falsity, as was his burden, or requested the court to discard misstatements of fact and then determine whether probable cause to search remained. Because of these lapses by King, according to the State, a *Franks* argument is not preserved for appeal.

We do not agree with the State on this point. A hearing was held before the circuit court in which the informant, the municipal judge, and the police officers all testified. All were cross-examined by defense counsel on the accuracy of statements in the affidavit and search warrant. Certain errors were admitted. The circuit court concluded, however, after hearing the testimony that based on the four corners of the affidavit it would deny the suppression.

The circuit court was correct. Here, the transaction between the informant and King was a controlled buy, and the informant's person and car were searched before contact with King. The informant was watched arriving at King's house and leaving King's house. The body mike worn by the informant allowed the officers to overhear the conversation between the informant and the occupant of the house where reference to a quarter-pound was overheard. The informant was searched at Spe-Dee Mart after leaving the house, and marijuana was found. The informant

identified King as the person who sold him the marijuana. The informant told the officers that he had observed approximately 60 marijuana plants at the King residence and restated this on cross examination at the hearing. The officers continued surveillance on the residence while in radio contact with the affiant, Officer McElveen, and assured the affiant that no one had left the trailer.

There is at least one factual discrepancy in the affidavit. Certainly the informant, Jeffery Kragel, cooperated with the Fayetteville police because of his arrest for delivery of marijuana and subsequently met with the police officers as part of that cooperation. However, we cannot conclude that the statements in the affidavit that the officers overheard a drug sale or that Kragel saw approximately 60 plants in King's living room or that two officers kept Kragel under "constant" surveillance are intentional or reckless falsifications. Kragel told the officers about the 60 plants at the Spe-Dee Mart. The plants may have been in a room other than the living room and the surveillance may not have been continuous, but the statements made are substantially correct.

In sum, though a few inaccuracies may appear in the affidavit they are relatively minor when viewed in the context of the totality of the circumstances, including the affidavit taken as a whole and the weight of the testimony of the participants who procured and executed the search warrant. This is essentially what the circuit court found when it concluded that the affidavit "was sufficient in its four corners." There was no error in the circuit court's refusal to suppress the evidence seized.

## II. CONTINUANCE

For his second point, King urges that the circuit court erred by failing to grant his motion for a two-week continuance based on lack of time to prepare.

Motions for a continuance are governed by Arkansas Rule of Criminal Procedure 27.3 which provides:

Rule 27.3. Continuances. The court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case.

It is well settled that a motion for a continuance is addressed to the sound discretion of the trial judge, and a decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Gonzales* v. *State*, 303 Ark. 537, 798 S.W.2d 101 (1990); *Butler* v. *State*, 303 Ark. 380, 797 S.W.2d 435 (1990). The appellant bears the burden of proving that the circuit court's denial of a continuance was an abuse of discretion, and that burden entails a showing of prejudice. *Rodriguez* v. *State*, 299 Ark. 421, 773 S.W.2d 821 (1989); *David* v. *State*, 295 Ark. 131, 748 S.W.2d 117 (1988).

King filed his motion on August 12, 1992 — the day of the trial — though he had mentioned it to the court two days earlier and requested a two-week continuance to prepare further for trial. In his motion and argument he noted that he was represented by his first attorney, Barry Watkins, until June 1, 1992, and that his second attorney, Joel Huggins, was appointed. King maintained that he needed additional time to meet with his second attorney to prepare and alluded to the fact that he was incarcerated in Calico Rock some distance away and was not available to meet with his attorney until Saturday, August 8, 1992, when he was returned to Washington County by the Sheriff.

In deciding this matter, the circuit court observed that appellant's return to Washington County on August 8 gave counsel the weekend to discuss a defense with King. The court then added: "And it's obvious to the Court from your pleadings that you're thoroughly familiar with the case, that you have it in hand, and I frankly can't see any reason to continue the case, unless you want to give me some more meat to your motion." In this regard, we note that Huggins advised the circuit court at the hearing that he met with King twice on June 3.

Defense counsel argues on appeal, as he did before the circuit court, that he needed additional time to prepare because his defense had changed. He added that he needed to subpoena an additional witness, Charlotte Guthrie, who he asserted was present at the drug sale. In rejecting this argument, the circuit court stated that defense counsel had known of Ms. Guthrie for some time and that her identity had not just come to light. To accommodate King and his counsel, however, the court issued a

forthwith subpoena for Ms. Guthrie.

For that facet of his continuance argument relating to an absent witness, King failed to meet the statutory requirement. *See* Ark. Code Ann. § 16-63-402 (1987). That statute requires that a motion for continuance due to an absent witness be accompanied by an affidavit showing what facts the affiant believes the witness will prove, that the affiant believes them to be true, and that the witness is not absent by the consent, connivance, or procurement of the party asking for the postponement. No affidavit as required by § 16-63-402 accompanied King's motion.

Finally, King has failed to show how he was prejudiced by the denial of his motion. *Rodriguez* v. *State, supra.* The circuit court was entirely correct in its ruling.

Affirmed.