Danny E. VERDICT *v.* STATE of Arkansas

CR 93-603 868 S.W.2d 443

Supreme Court of Arkansas
Opinion delivered December 20, 1993
[Rehearing denied January 18, 1994.]

*Val P. Price* and *John Barttelt*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Danny E. Verdict was convicted of murdering his ex-wife, Marcella Kelly, and sentenced to life in prison. He appeals his conviction and sentence and presents four issues for our review. He asserts that one of his two attorneys was prevented from being present during all of *voir dire* and that this denied him a fair trial; that a statement made on his trip back from California after his arrest was in violation of his *Miranda* rights; that the circuit court erred in allowing his daughter to testify against him; and that an expert witness's testimony regarding forensic odontology was irrelevant and not credible and, thus, should have been disallowed. None of the issues has merit, and we affirm the sentence.

On February 2, 1992, Marcella Kelly was found dead in her residence in north Jonesboro with six or seven bullet wounds in her body. She had been shot from behind. She also had what appeared to be a bite wound on her left thumb. Numerous 9MM shell casings were found on the kitchen floor. Her roommate, Ann Chamberlin, discovered the body at about 3:45 a.m. and reported to Jonesboro police officers that she last saw Kelly on Saturday afternoon, February 1, 1992. She said that Kelly told her that her ex-husband, Verdict, was planning to drop by to bring a stereo. A stereo was found by the police officers in her living room chair. Four neighbors reported seeing Verdict's car on Saturday afternoon parked in Kelly's driveway. Police officers went to the home that Verdict shared with his aunt, Betty Reeves, that

same Sunday, and she reported that Verdict and much of his clothing were gone. She also stated that Verdict owned a 9MM Ruger semi-automatic pistol.

Verdict later testified at trial that he drove to California to see his daughter, Kimberly Myers, one last time before he committed suicide. He told his daughter that he had shot Kelly, and she urged him to turn himself in to the authorities which he did. Two officers then came to California to transport him back to Arkansas — Officer James Tate of the Jonesboro Police Department and Deputy Sheriff Spencer Moore of the Craighead County Sheriff's Department. The officers read Verdict his *Miranda* rights in California, and he refused to give a statement.

On the drive back to Arkansas, according to Officer Tate, Verdict did make an incriminating statement. The men were at a gasoline station in Sulphur Springs, Texas, and Deputy Sheriff Moore had left the car. Verdict said that he dreaded the upcoming trial, and Tate responded that the best thing to do was to tell the truth. Verdict replied: "I just didn't know what I was doing."

Verdict was charged with capital murder and later charged with a separate count as a habitual offender with three prior offenses. The circuit court found him to be indigent and appointed two attorneys, Val Price and John Barttelt, to represent him. The State had dental impressions taken from Verdict to match against the bite wound on the victim's left thumb and sent the impressions and the severed thumb to a forensic odontologist in Mississippi, Dr. Michael West, for examination.

A few days before trial, the circuit court heard pretrial motions, including Verdict's motion in limine to exclude the testimony of Dr. West concerning the bite mark on Kelly's thumb. The court noted that in Arkansas scientific evidence is admissible if it is relevant and concluded that this evidence was relevant.

At the same hearing, Val Price stated that he objected to the trial setting on November 9, 1992, because he had an oral argument in front of the Arkansas Supreme Court on that morning and would miss *voir dire*. The court concluded that co-counsel, John Barttelt, could select the jury.

. The trial in this matter followed. After *voir dire*, the circuit court conducted a *Denno* hearing and considered Verdict's motion to suppress his statement made on the trip from California to Arkansas on the basis that it was not knowingly made after a waiver of *Miranda* rights. The motion was denied. Verdict's daughter, Kimberly Myers, who was subpoenaed from California, testified that her father had confessed to her that he shot Kelly. The video deposition of Dr. Michael West was played to the jury. West testified that the bite on Kelly's thumb matched the pattern of Verdict's teeth and that without a doubt he was the biter.

Verdict then testified and admitted shooting Kelly but said that he lost control of himself. He denied biting her thumb. The jury convicted him of first degree murder, and he was sentenced to life imprisonment.

## I. CONTINUANCE

Verdict's first assertion of error is that the circuit court erred when it refused to grant him a one-day continuance when one of his two attorneys, Val Price, had an oral argument before this court and could not be present as the trial began.

The burden is on the movant to show good cause for a continuance. *Oliver* v. *State*, 312 Ark. 466, 851 S.W.2d 415 (1993); *see also* Ark. R. Civ. P. 27.3. Such a motion is addressed to the discretion of the trial judge and will not be reversed absent an abuse of discretion. *Oliver* v. *State, supra; Weaver* v. *State*, 305 Ark. 180, 806 S.W.2d 615 (1991). The burden of proving an abuse of discretion due to resulting prejudice in denying a continuance is upon the appellant. *Gomez* v. *State*, 305 Ark. 496, 809 S.W.2d 809 (1991); *David* v. *State*, 295 Ark. 131, 748 S.W.2d 117 (1988). This court has repeatedly stated that prejudice is not presumed in this context, but, instead, an appellant must demonstrate prejudice before we will consider a trial court's denial of a continuance to be an abuse of discretion. *See, e.g., King* v. *State*, 314 Ark. 205, 862 S.W.2d 229 (1993); *Kilgore* v. *State*, 313 Ark. 198, 852 S.W.2d 810 (1993). A mere assertion of error is not sufficient to warrant reversal. *Kilgore* v. *State, supra.*

██ We give Verdict's argument in this regard little credence because he was represented by his other appointed counsel, John Barttelt, as the trial began and for part of *voir dire*, and there is no indication that he was prejudiced in any form or fashion by Barttelt's solo representation. There is no claim that Barttelt was incompetent or incapable of conducting *voir dire* or that any juror was improperly seated or improperly struck during the period of Val Price's absence. Price returned before the noon recess and participated in the balance of *voir dire*. The absence of prejudice is fatal to Verdict's claim of error. *Lynch* v. *State*, 188 Ark. 831, 67 S.W.2d 1011 (1934). The circuit court correctly denied the continuance motion.

## II. SUPPRESSION OF STATEMENT

Verdict next contends that the circuit court erred by not suppressing his statement to Officer James Tate of the Jonesboro Police Department during their trip from California to Arkansas.

At the *Denno* hearing, Officer Tate testified that he read Verdict his *Miranda* rights after arriving in California, and Verdict said that he did not want to give a statement. Two days later while they were stopped for gas in Sulphur Springs, Texas, the police officer related that Verdict said to him that he dreaded the upcoming trial. Tate stated that he answered that the best thing to do was to tell the truth. Verdict replied: "I just didn't know what I was doing." Tate did not advise Verdict of his rights a second time before this statement.

██ We initially observe that we can see no basis for a conclusion that by advising Verdict to tell the truth at trial, Officer Tate was "interrogating" him. The United States Supreme Court has stated that an "interrogation" extends only to words or actions on the part of police officers which they should have known were reasonably likely to elicit an incriminating response. *Rhode Island* v. *Innis*, 446 U.S. 291 (1980). Such was not the case here.

 The critical question before us, though, is whether Verdict knowingly and intelligently waived his right to silence which he had earlier invoked. We have recently held that to determine whether a waiver was knowingly and intelligently made, the court must look to the totality of the circumstances. *Hart* v. *State*, 312 Ark. 600, 852 S.W.2d 312 (1993). This inquiry includes

an evaluation of the appellant's age, education, experience, and ability to understand his rights. *Id.* Applying this set of factors to the case at hand, we observe no error. The appellant was 42 years old, there was no evidence that he had below average intelligence, and he was no stranger to the legal system as evidenced by his prior convictions contained.[1] Also, while not an essential factor, the clear indication is that Verdict initiated the exchange by voicing his misgivings about the trial. Taken together, the circumstances support the court's ruling of admissibility.

## III. DAUGHTER'S TESTIMONY

For his next point, Verdict argues that the testimony of his daughter, Kimberly Myers, should have been suppressed because it was obtained in violation of the Uniform Act to Secure the Attendance of Witnesses, codified as Ark. Code Ann. § 16-43-403 (1987). Specifically, Verdict claims that the Arkansas judge's certificate was sent to California and that Myers was arrested there and placed in jail for three days before she was transported back to this state. Verdict maintains this jailing in California evidences non-compliance with § 16-43-403 and was clearly prejudicial to him as this was the only way the State could get his daughter to testify against him.

The fallacy in Verdict's argument is that the State of Arkansas appears to have done everything according to Hoyle, and no evidence was offered to counter this. All that was presented to the circuit court was a verbal assertion by defense counsel that Ms. Myers was jailed in California. No proof of this was presented, and without proof, we have nothing to assess and consider. Moreover, we are mindful that § 16-43-403 does contemplate that the material witness be taken into custody in the foreign state. There is the further point that Verdict has no standing to raise an issue pertaining to a violation of Kimberly Myers's rights on her behalf. *Price* v. *State*, 313 Ark. 96, 852 S.W.2d 107 (1993). The circuit court did not err on this point.

---

[1] The circuit court found at trial that only two previous convictions could be used for habitual offender purposes.

## IV. EXPERT TESTIMONY

Verdict's last asserted error is that the circuit court was in error in admitting the video deposition of Dr. Michael West for several reasons: the bite mark evidence was not reliable scientific evidence, any relevancy of this evidence was outweighed by its prejudicial effect under Ark. R. Evid. 401 and 402, and West's credibility had been called into question in Mississippi.

The first issue is easily dispensed with. We do not view human bite mark identification as novel scientific evidence under *Prater* v. *State*, 307 Ark. 180, 823 S.W.2d 429 (1991). We said as much in *Davasher* v. *State*, 308 Ark. 154, 823 S.W.2d 863 (1992), when we noted that such evidence on human bite marks is widely accepted by the courts. We further underscored in *Davasher* v. *State*, that bite testimony (in that case, a dog bite) was more readily understandable by the jury than DNA testimony, for example. In addition, the circuit court was entirely correct in the case before us that a bite mark timed by Dr. West to have occurred minutes before death is relevant to show who might have been present at that time. In sum, the circuit court was right in finding that Dr. West's testimony was relevant and reliable.

With regard to Dr. West's credibility, the State points out that Verdict merely provided the circuit court with a copy of a request for a hearing filed by a criminal defendant in Mississippi which accused Dr. West of perjury. No response filed by Dr. West or any ruling by a Mississippi court was presented to the circuit court or forms a part of this appeal. This information is clearly insufficient for any determination relative to Dr. West's credibility by this court, as it was for any ruling by the circuit court. There is also the point that the perjury allegation made in Mississippi appears to pertain to testimony Dr. West gave regarding alternate light imaging which was not the scientific technique used in the instant case. We affirm the circuit court's ruling on this issue.

Finally, Verdict's contention that the State did not show that a video deposition was necessary because Dr. West was unavailable for trial is equally insubstantial because the record reveals that he was in London, England at the time of the trial.

The record in this case has been reviewed in accordance with Ark. Sup. Ct. R. 4-3(h), and no reversible error has been found.

Affirmed.