Raymond C. SANDERS *v.* STATE of Arkansas

CR 92-1145 878 S.W.2d 391

Supreme Court of Arkansas
Opinion delivered June 20, 1994
[Rehearing denied September 12, 1994.]

330

*Tona M. Demers*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. This is a death penalty case. The appellant, Raymond C. Sanders, has brought three previous criminal appeals before this court. *Sanders* v. *State*, 305 Ark. 112, 805 S.W.2d 953 (1991) (*Sanders* I); *Sanders* v. *State*, 308 Ark. 178, 824 S.W.2d 353 (1992) (*Sanders* II); *Sanders* v. *State*, 310 Ark. 510, 838 S.W.2d 359 (1992) (*Sanders* III). One of the appeals (*Sanders* II) arose from his convictions of the capital murders involved in the present appeal, while the other two (*Sanders* I and III) concerned an unrelated capital murder. In the current appeal, only the resentencing proceedings, mandated by this court's partial reversal and remand in *Sanders* II, *supra*, are under consideration.

Sanders raises eight points for reversal, none of which has merit. He contends that the trial court erred in (1) determining that the Grant County Circuit Court was the proper venue for the trial or the resentencing proceedings; (2) permitting the State to use a murder committed after the murders at issue as proof of an aggravating circumstance; (3) allowing inflammatory photographs to be shown to the jury during the resentencing proceedings; (4) refusing to grant a continuance; (5) failing to disqualify the prosecuting attorney; (6) denying the defense's motion for a mistrial on the basis of the presiding judge's alleged conversation with the jury foreman; (7) denying the defense's motion to dismiss the capital felony murder charge on the basis that the statutory definition of capital felony murder unconstitutionally overlaps with the statutory definition of first-degree felony murder; (8) denying the defense's motion to dismiss the capital felony murder charge on the basis that the statutory definition of capital

murder does not narrow the categories for which the death penalty may be imposed.

It should be noted, at the outset, that Sanders's abstract fails to comply with Ark. Sup. Ct. R. 4-2(a)(6), which requires that "[n]ot more than two pages of the record shall in any instance be abstracted without a page reference to the record." Those portions of the appellant's abstract in which the testimony at various hearings is condensed comprise fifty-two pages of the appellant's seventy-three-page abstract, yet only three single-page references appear. Within the eight points comprising Sanders's argument, there are no references whatsoever to pages in the abstract; only transcript citations are supplied. In addition, as will be discussed later, the portion of the record on which Sanders's sixth point for reversal is based is not abstracted, though the State includes the relevant testimony in its brief. Although this court has, from time to time, required rebriefing in such circumstances under Sup. Ct. R. 4-2(b)(2), the fact that this is a second appeal of an ongoing capital case (with a factual background fully developed in the previous appeal) enables us to resolve the issues raised on the basis of the briefs as presented.

*Facts*

The facts in the present matter were set forth in *Sanders* II, 308 Ark. at 181-182, 824 S.W.2d at 355-356. As the present appeal consists exclusively of a review of the resentencing phase, an extended narrative recapitulation is unnecessary other than to note that on or about November 21, 1989, Sanders shot and killed Charles and Nancy Brannon, ransacked their house, and removed rings from Mrs. Brannon's fingers.

The original trial was held before a jury in February 1991 in the Grant County Circuit Court. Sanders was found guilty on both charges of capital murder and was sentenced to death on each count. On appeal to this court, the capital murder convictions were affirmed, but the death sentences were reversed and remanded for resentencing. *Sanders* II, *supra*.

At the resentencing trial, held before a new jury in the Grant County Circuit Court on August 28 and 31, 1992, Sanders again received the death penalty on both counts for the capital murders of the Brannons. He again appeals.

*I. Venue*

In his first argument for reversal, Sanders asserts that the trial court erred in determining that the Grant County Circuit Court was the proper venue for both the original trial and the resentencing proceedings. He contends that he was denied his constitutional right to be tried in the county in which the crimes occurred — in this instance, Hot Spring County — and claims, without offering supporting evidence, that he was "purposely tried in a county more likely to give him the death penalty."

Article 2, section 10, of the Arkansas Constitution provides that a criminal defendant has the "right to a speedy and public trial by impartial jury of the county in which the crime shall have been committed." Venue, however, "may be changed to any other county of the judicial district in which the indictment is found, upon the application of the accused." *See also Davis* v. *Reed*, 316 Ark. 575, 873 S.W.2d 524 (1994); *Waddle* v. *Sargeant*, 313 Ark. 539, 855 S.W.2d 919 (1993).

Sanders's own counsel had, prior to the February 1991 trial, made a motion for change of venue. Although no record of an application for or granting of a change of venue in compliance with Ark. Code Ann. § 16-88-204 (1987) appears in the record, the original defense attorney, Bill Murphy, testified on August 10, 1992, at a pretrial evidentiary hearing in the resentencing proceedings, that the trial court had granted the motion and had given Sanders the choice to move venue for the initial trial to either Saline or Grant County. Mr. Murphy stated that, "[a]fter discussing it with my client, we decided together on Grant County." Sanders, testifying at the pretrial hearing, insisted that he had not agreed to the change of venue, but the trial judge found that Mr. Murphy's account corresponded to his own recollection of the matter and that "there was no objection to the motion."

Conflicts in testimony are for the trial-court to resolve, and the court is not obliged to believe any witness's testimony — particularly that of the accused, the person most interested in the outcome of the proceedings. *Ross* v. *State*, 300 Ark. 369, 779 S.W.2d 161 (1989). Venue in Grant County was proper.

## II. Previous conviction for subsequent crime

For his second point on appeal, Sanders argues that the trial court erred in permitting the State to prove the aggravating circumstance of the commission of another felony involving the use of violence by introducing his conviction for a murder that occurred after the killings in the present case. Under Ark. Code Ann. § 5-4-604(3) (Repl. 1993), one of the aggravating circumstances that may be considered in death-penalty cases is that

> The person previously committed another felony, an element of which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person. . . .

The murder of Frederick LaSalle, for which Sanders was convicted and sentenced to life imprisonment without parole, occurred on December 31, 1989, whereas the Brannon killings occurred on or about November 21, 1989. Therefore, Sanders maintains, it cannot be considered a "previously committed" violent felony under the statute.

We reversed Sanders's original conviction in the LaSalle murder and remanded the matter for a new trial in *Sanders* I. The second conviction and life sentence were affirmed in *Sanders* III, handed down on October 5, 1992. In the previous appeal in the present case, *Sanders* II, involving the murder of the Brannons, we held that, where the prosecutor had introduced the conviction judgment in the LaSalle killing to establish an aggravating circumstance and that judgment was subsequently reversed, the use of the conviction was prejudicial, and Sanders was entitled to be resentenced. *See Johnson* v. *Mississippi*, 486 U.S. 578 (1988). In *Sanders* II, we noted that, "because we must declare error on this point, we need not address the appellant's argument that the capital murder was not previously committed to the present crimes as is required under § 5-4-604(3)." 308 Ark. at 184, 824 S.W.2d at 357.

The State, in the present appeal, contends that, by virtue of the requirement of Ark. Sup. Ct. R. 4-3(h) that the Supreme Court of Arkansas review all prejudicial errors in a death case, this court has decided the issue against Sanders, and

the doctrine of the law of the case applies. *See Bennett* v. *State*, 308 Ark. 393, 825 S.W.2d 560 (1992). In *Sanders* II, however, we were merely declining to consider a single facet of a larger issue which had already been resolved in Sanders's favor, thus rendering consideration of the subpoint unnecessary. Thus, it is necessary to focus upon the merits of the question as law of the case does not apply.

It should be noted that this court has never addressed precisely this issue — that is, whether a violent felony committed after a crime that warrants imposition of the death penalty may be considered as an aggravating circumstance in the sentencing phase when the conviction for the violent felony was entered prior to the sentencing trial. Other jurisdictions, however, have dealt with the question, and their holdings have been collected in Thomas M. Fleming, Annotation, *Sufficiency of Evidence, for Purposes of Death Penalty, to Establish Statutory Aggravating Circumstance that Defendant was Previously Convicted of or Committed Other Violent Offense, had History of Violent Conduct, Posed Continuing Threat to Society, and the Like — Post Gregg Cases*, 65 A.L.R.4th 838, 919-925 (1988).

In *Daugherty* v. *State*, 419 So.2d 1067 (Fla. 1982), the appellant, who had been sentenced to death for the murder of a hitch-hiker, challenged the admission of various prior murder, assault, and robbery convictions as an aggravating circumstance because, except for one murder, all of the crimes occurred after the killing for which he received the death sentence. The Florida Supreme Court, citing its earlier decision in *Elledge* v. *State*, 346 So.2d 998 (Fla. 1977), emphasized that the operative statutory language referred to "previous convictions" rather than "previous crimes." However, the Florida court, quoting from *King* v. *State*, 390 So.2d 315, 320 (Fla. 1980), *cert. denied*, 450 U.S. 989 (1981), pointed out that "[t]he legislative intent is clear that any violent crime for which there was a conviction at the time of sentencing should be considered as an aggravating circumstance." 419 So.2d at 1069.

An Alabama death penalty case raised the question whether the trial court had erred in admitting evidence of the appellant's prior convictions in Georgia when those offenses occurred after the crime for which he was sentenced to death in Alabama. The Alabama Code employed the Model Penal Code term "previously

convicted," and the Alabama Supreme Court upheld the determination by the Court of Criminal Appeals that the language referred to "a time prior to sentence instead of prior to the date of the commission of the capital offense." *Ex Parte Coulter*, 438 So.2d 352 (Ala. 1983); *see also Coulter v. State*, 438 So.2d 336 (Ala. Cr. App. 1982).

The Arizona Supreme Court, in *State v. Steelman*, 612 P.2d 475 (Ariz. 1980), rejected the appellant's contention that nine murder convictions and five robbery convictions from California should not have been considered as an aggravating circumstance in his Arizona sentencing because they were committed after the murders for which he was sentenced to death. The court discussed the enhancement statutes in the Arizona Criminal Code, which required that the prior conviction be based on an offense committed before the offense for which the defendant is sentenced in order to serve simultaneously as a warning and encouragement to first offenders. But the Arizona death penalty statute, said the court, "makes no reference to when the acts underlying those convictions must have been committed." 612 P.2d at 481. The court, noting that the "purpose of an aggravation/mitigation hearing is to determine the character and propensities of the defendant," observed that the "[r]evelation of subsequent lawless acts of violence would help to attain the objectives of the sentencing statute." *Id. See also State v. Tison*, 633 P.2d 335 (Ariz. 1981).

A "prior murder convictions special circumstances statute" was at issue in *People v. Hendricks*, 737 P.2d 1350 (Cal. 1987), a California death penalty case. There, the California Supreme Court stated that the statutory language setting forth the special circumstance that "[t]he defendant was previously convicted of murder in the first or second degree" was unambiguous in its simple and unequivocal reference to previous convictions. "The order of the commission of the homicides," declared the court, "is immaterial." 737 P.2d at 1357.

Each of the cases just cited contains a distinction that is critical in the present matter. The relevant statute in each instance speaks in terms of *previous convictions*. Within that framework, a murder or violent act might occur before or after the commission of the homicide under current consideration.

338

Under Ark. Code Ann. § 5-4-604(3), however, the language clearly states that "[a]ggravating circumstances shall be limited to," among other enumerated examples, a situation in which "[t]he person *previously committed another felony*." This phraseology is superficially similar to the Florida Supreme Court's disapproved term "previous crimes" in *Daugherty* v. *State, supra.* Implicit in the Arkansas statute's phrase "previously committed another felony," which itself is supported by the statutory elaboration of the element of "the use of threat of violence" and "the creation of a substantial risk of death or serious physical injury," is at least the contemplation of a conviction. Indeed, proof of a conviction serves to establish the aggravating circumstance of a previous violent felony. And, it should be recalled, the Florida court stressed in *Daugherty* that the purpose of the statute was to ensure that "any violent crime for which there was a conviction at the time of the sentencing should be considered as an aggravating circumstance." 419 So.2d at 1069.

██ The fundamental thrust of the Arkansas aggravating-circumstances statute is prospective. As we held in *Whitmore* v. *State*, 296 Ark. 308, 756 S.W.2d 890 (1988), a case concerning the introduction of a twenty-three-year-old violent felony conviction:

> Ark. Code Ann. § 5-4-604 . . . is not concerned with the defendant's character at the time of trial, for the jury already knows the defendant has just recently committed a murder. Instead, this statute is concerned with disclosing whether the defendant's history establishes such a propensity for violence that it will reoccur. Once the jury knows about a defendant's past propensity for violence, it can weigh that against any mitigating circumstances. In striking this balance the jury determines if the defendant has such a marked propensity for violence that it would likely manifest itself again in the future. If the jury determines beyond a reasonable doubt that the defendant will strike again, it may sentence him to death.

296 Ark. at 316, 756 S.W.2d at 894. Naturally, a violent felony that was committed after the killing in question (but which resulted in a conviction prior to the sentencing hearing) would have considerable bearing on a convicted murderer's propensity to "strike again."

For these reasons, we have no hesitancy in saying that the trial court did not err in allowing the State to introduce evidence of Sanders's conviction for the murder of Frederick LaSalle.

### III. Admission of photographs of victims

Sanders asserts, in his third point for reversal, that the trial court erred in permitting the State to introduce into evidence crime-scene photographs showing the bodies of Mr. and Mrs. Brannon, contending that they were used for no other purpose than to inflame and prejudice the jury.

This court has long held that the admissibility of photographs is a matter within the sound discretion of the trial court, and the trial court's ruling will not be reversed absent an abuse of discretion. *Hickson* v. *State*, 312 Ark. 171, 847 S.W.2d 691 (1993); *Smith* v. *State*, 303 Ark. 524, 798 S.W.2d 94 (1990). Even gruesome photographs are admissible if they assist the jury in any of the following ways: (1) by shedding light on some issue; (2) by proving a necessary element of the case; (3) by enabling a witness to testify more effectively; (4) by corroborating testimony; or (5) by enabling jurors better to understand the testimony. *Weger* v. *State*, 315 Ark. 555, 869 S.W.2d 688 (1994); *see also Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342 (1979). The mere fact that a photograph is inflammatory is not, in and of itself, a sufficient reason for its exclusion. *Weger* v. *State, supra.*

As stated previously, a new jury had been empaneled for the resentencing proceedings. The trial court admitted three photographs of the body of Charles Brannon, two photographs of Nancy Brannon's body, and one photograph of their house. The trial court refused to admit nine other photographs. The photographs enabled the jurors, who were unacquainted with the details of the case, to understand better the testimony of witnesses regarding the manner of death and the discovery of the bodies. The probative value outweighed the prejudicial impact, and the trial court did not abuse its discretion.

### IV. Motion for continuance

As the fourth point for reversal raised by Sanders is that the trial court erred in refusing to grant the defense motion for a

continuance, it is necessary to review some related antecedent matters. Sanders had filed motions for discovery and to compel in April and May 1992. A hearing was held on the motions on June 15, 1992. The State argued that it had provided its case file to the attorney who had represented Sanders in the previous trial and that it was under no obligation to provide the current counsel with the same material that could be obtained from the previous defense attorney or checked out from the Supreme Court Clerk's Office. The trial court issued an order requiring the previous defense attorney to provide the current counsel with all the information on the case in his possession. Additionally, the prosecuting attorney reported that he had spoken with another former defense lawyer, Bill Murphy, who agreed to furnish the current counsel with everything he had available on the case. At a subsequent hearing on August 3, 1992, the current counsel confirmed that Mr. Murphy had given her his complete file from the original trial.

Just prior to the resentencing proceeding, Sanders's present attorney moved for a continuance on the basis that the State had neither informed her of the nature of the anticipated testimony nor disclosed to her the aggravating circumstances — other than the prior violent felony conviction — that would be advanced by the State. Counsel also moved for a continuance on the basis that Sanders's appeal in the LaSalle murder case had not been decided at that point. The trial court denied the motion for a continuance, and did so again when, after the State's case-in-chief and the jury's verdict, the defense renewed its motion.

The burden is on the movant to show good cause for a continuance. *Oliver* v. *State*, 312 Ark. 466, 851 S.W.2d 415 (1993). A motion for a continuance is addressed to the discretion of the trial judge and will not be reversed absent an abuse of discretion. *Verdict* v. *State*, 315 Ark. 436, 868 S.W.2d 443 (1993). The burden of proving an abuse of discretion due to prejudice resulting from the denial of a continuance is upon the appellant. *Henderson* v. *State*, 310 Ark. 287, 835 S.W.2d 865 (1992). Prejudice is not presumed in this context; instead, an appellant must demonstrate prejudice before this court will consider a trial court's denial of a continuance to be an abuse of discretion. *King* v. *State*, 314 Ark. 205, 862 S.W.2d 229 (1993).

■ Here, apart from an assertion in his brief of hardship imposed by the State having provided, seventeen days prior to trial, a witness list bearing more than thirty names, no allegation of prejudice has been made nor a showing of a particular need. Nothing specific is offered to support Sanders's contention that seventeen days is "hardly enough notice." As the prosecutor indicated in the hearing on June 15 and August 3, 1992, Sanders had access to the record of the first trial in this matter. The current counsel also acknowledged that she had received the case file from the original trial from attorney Murphy. Moreover, counsel had available this court's opinion in *Sanders* II, which contains a substantial account of testimony offered at the first trial in the Brannon murder case.

■ As for Sanders's complaint that the State failed to discover to the current counsel the anticipated testimony of the witnesses for the prosecution, we have held that the State has no obligation to discover to defense counsel the substance of the anticipated testimony by State's witnesses. *See Brown* v. *State*, 315 Ark. 466, 869 S.W.2d 9 (1994).

Sanders has failed to sustain his burden of establishing prejudice amounting to an abuse of discretion on the part of the trial court in denying the motion for continuance.

## V. *Motion to disqualify prosecutor*

In his fifth argument for reversal, Sanders urges that the trial court erred in denying a defense motion to disqualify the prosecuting attorney individually and the prosecuting attorney's office as a whole. The motion was grounded on the fact that, in the LaSalle murder case, prosecutor Dan Harmon had represented Byron Hopes, Sanders's co-defendant, as well as on the fact that Ed Scrimshire, a deputy prosecuting attorney, had been appointed to represent Sanders when he was initially charged with the murders of Mr. and Mrs. Brannon and then went to work for the prosecutor and assisted the State in the original trial in this matter.

■ Simply put, Sanders has failed to demonstrate prejudice resulting from the prosecuting attorney's participation in the Brannon murder case. This court will not reverse in the absence of such a showing. *See Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991). Although the defense counsel asserted,

in connection with her motion to disqualify, that Byron Hopes would testify for the State to offer substantiation of an aggravating circumstance, Hopes did not testify at all during the resentencing proceedings. The trial court gave the State the option to prove a previous violent felony by the introduction of either extrinsic evidence or a judgment of conviction. The State provided the judgment of conviction in the LaSalle murder case to establish an aggravating circumstance.[1] Clearly, no prejudice ensued under the circumstances.

Regarding deputy prosecutor Scrimshire's position, Sanders is barred from obtaining relief due to the operation of the doctrine of the law of the case. *See Bennett* v. *State, supra.* Sanders was obligated to raise the issue at the time of his first trial in this matter and to pursue the question in his earlier appeal.

The trial court did not err in denying the motion to disqualify the prosecuting attorney and the prosecutor's office.

### VI. Motion for mistrial

For his sixth point for reversal, Sanders contends that the trial court erred in refusing to grant a mistrial after the judge allegedly engaged in an improper conversation with at least the jury foreman. Nothing pertaining to the motion for mistrial has been abstracted, and we would not be in a position to review the issue were it not for the State's inclusion in its brief of the relevant statements by defense counsel and the trial judge.

When the jury returned to the courtroom with its verdicts, it became apparent that the jurors had misunderstood their instructions on completing the verdict forms. Two of the four forms had not been filled out, and the trial court explained the contents of Forms 2 and 3. The jury then retired to the jury room to continue its deliberations, and the trial court offered the following summary for the record:

> The foreman just gave this back to me and asked for an explanation. I just said let me have both forms and now I'm going to talk to you two. I can see what his problem

---

[1] Sanders also makes an unsupported collateral argument concerning the "suspect" character of the second LaSalle murder trial. That matter, of course, was settled in *Sanders* III.

is. This form is misprinted. This should be if you check A, B, and C then sentence Raymond C. Sanders to death by lethal injection. It says here life imprisonment without parole. So, we're going to correct those and give them Form 3 back.

After the amended form was delivered to the jury, Sanders's attorney addressed the trial court as follows:

Your Honor, at this time I would like to move for a mistrial. The concerns to the jury regarding these forms were not done on the record. We don't know who has been discussing what with the jury. We have all these concerns about what's going on and I would like to move for a mistrial at this time.

The motion was denied.

 Sanders's motion was evidently based on Ark. Code Ann. § 16-89-125(e) (1987), which provides:

After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the counsel of the parties.

The procedure set forth above is mandatory and must be strictly followed. *Davlin* v. *State*, 313 Ark. 218, 853 S.W.2d 882 (1993). If the procedure is not followed by the trial court, the State bears the burden of proving that no prejudice resulted. *See Tarry* v. *State*, 289 Ark. 193, 710 S.W.2d 202 (1986). The provisions of § 16-89-125(e) are mandatory, in part, to ensure that the jury is not misinformed regarding the law as a consequence of the trial court's explaining the law to only one member of the jury. *Andrews* v. *State*, 251 Ark. 279, 472 S.W.2d 86 (1971).

 In the present case, the trial court promptly reported to counsel that the jury foreman had sought an explanation of the forms. The judge took the forms from the foreman and detected a misprint, which he ordered corrected and then resubmitted to the jury. No "part of the evidence" or "point of law" was dis-

cussed. No misinformation was communicated to the jury. Rather, a corrected verdict form was supplied. Under the circumstances, we hold that the trial court did not err in refusing to sanction the drastic remedy of a mistrial.

### VII. Capital-felony murder/first-degree murder overlap

 Sanders asserts, in his seventh point for reversal, that the statutory definition of capital-felony murder found in Ark. Code Ann. § 5-10-101(a)(1),(2) (Repl. 1993) is unconstitutionally vague because it overlaps with the statutory definition of first-degree murder found in Ark. Code Ann. § 5-10-102(a)(1). This is a well-worn argument we have rejected on numerous occasions, holding that the statutes are not constitutionally infirm because there is no impermissible uncertainty in the definitions of the capital-murder offenses. *McArthur* v. *State*, 309 Ark. 196, 830 S.W.2d 842 (1992); *Smith* v. *State*, 306 Ark. 483, 815 S.W.2d 922 (1991); *Hill* v. *State*, 303 Ark. 462, 798 S.W.2d 65 (1990); *Sellers* v. *State*, 300 Ark. 280, 778 S.W.2d 603 (1989).

### VIII. Narrowing of categories in capital-murder statute

 The final point raised for reversal by Sanders is that the capital-murder statute violates the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment. He contends that Ark. Code Ann. § 5-10-101(a)(4) (Repl. 1993), which defines capital murder, in part, as the killing of a person "[w]ith the premeditated and deliberated purpose of causing the death of another person," fails adequately to "narrow the death penalty cases from the non-death cases."

This issue has been considered and rejected in the past by this court. *Cox* v. *State*, 313 Ark. 184, 853 S.W.2d 266 (1993) (class of offenses narrowed by aggravating circumstance); *Johnson* v. *State*, 308 Ark. 7, 823 S.W.2d 800, *cert. denied*, 112 S. Ct. 3043 (1992) (narrowing primarily occurs at penalty phase).

### IX. Comparative review

 This court conducts, on a case-by-case basis, a comparative review of each death penalty case on appeal. *Ruiz* v. *State*, 280 Ark. 190, 655 S.W.2d 441 (1983). In conducting this comparative review, the Supreme Court considers the following factors: (1) whether the death sentence at issue was the result of

passion, prejudice, or any arbitrary factors; (2) whether the evidence supports the jury's finding of any statutory aggravating circumstance; (3) whether the evidence supports the jury's findings with regard to whether the aggravating circumstances outweigh the mitigating circumstances; and (4) whether a death sentence is excessive. *Henderson* v. *State*, 311 Ark. 398, 844 S.W.2d 360 (1993).

[22] The record shows that Sanders committed two capital murders in the furtherance of his theft of cash and jewelry from the Brannons. This court has found murders committed in the course of a robbery in order to facilitate the theft of property from the victims to be proportional in warranting the imposition of the death penalty. *Davis* v. *State*, 314 Ark. 257, 863 S.W.2d 259 (1993); *Whitmore* v. *State, supra.*

The jury in the resentencing hearing found two aggravating circumstances: (1) the capital murder was committed for the purpose of avoiding or preventing an arrest; and (2) Sanders had previously committed a violent felony. The State introduced supporting evidence on the first finding from which the jury could have inferred that Sanders shot Mr. and Mrs. Brannon in order to prevent them from informing the police that he either had ransacked or intended to ransack their house for the purpose of stealing a large sum of cash that Mr. Brannon was reputed to have kept there. In support of the second finding, the State introduced the judgment of conviction in the February 1992 LaSalle murder case. These factors outweighed the evidence, offered in mitigation, of Sanders's military service, Bible study, and junior- and senior-high track-meet ribbons.

## X. Rule 4-3(h)

The State has done an especially commendable job in complying with Ark. Sup. Ct. R. 4-3(h), by reviewing the entire record, making certain that all rulings to Sanders, together with those parts of the record necessary for an understanding of each adverse ruling, have been abstracted, and by amply supplementing the appellant's abstract where other deficiencies existed. We agree with the State's Rule 4-3(h) analysis in all of its particulars.

Affirmed.