Jack Gordon GREENE *v.* STATE of Arkansas

CR 96-362 977 S.W.2d 192

Supreme Court of Arkansas
Opinion delivered November 5, 1998

*William M. Pearson*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen.; and *James Gowen*, Law Student Admitted to Practice Pursuant to Rule XV(E)(1)(b) of the Rules Governing Admission to the Bar of the Arkansas Supreme Court under the Supervision of *Kelly K. Hill*, Deputy Att'y Gen., for appellee.

DAVID NEWBERN, Justice. In 1992, Jack Gordon Greene was tried for the murder of Sidney Jethro Burnett. A jury found Mr. Greene guilty and returned a death sentence. We affirmed the conviction but set aside the death sentence and remanded the case for resentencing. *Greene v. State,* 317 Ark. 350,

878 S.W.2d 384 (1994)("*Greene I*"). A resentencing proceeding occurred, and a second jury sentenced Mr. Greene to death. Mr. Greene has appealed from his death sentence and alleges six points of error. We conclude that two of them have merit. We also have determined, pursuant to our review of the transcript in accordance with Ark. Sup. Ct. R. 4-3(h), that yet another reversible error, not argued by Mr. Greene, occurred. We must vacate the sentence and again remand the case.

The facts surrounding the murder are set out at length in *Greene I*. We restate them briefly. Mr. Burnett and his wife befriended Mr. Greene and his wife when the Greenes sought help from the Burnetts through a church charity program. The Burnetts gave the Greenes employment and a place to live. The Greenes apparently had marital difficulties. Ms. Greene left Arkansas, and thereafter Mr. Greene left, but he returned to Johnson County briefly and was seen by Ms. Burnett. Mr. Greene apparently thought Ms. Burnett had interfered in his relationship with his wife.

Mr. Burnett's body was found in his home with his feet and hands bound. He had been shot in the chest and head and beaten with a hard object. He had been stabbed more than once, and his face had been mutilated. The State Medical Examiner testified that Mr. Burnett had been subjected to painful stabbing and beating while still alive. A .25-caliber firearm caused the bullet wounds.

After Mr. Burnett's body was discovered, Mr. Greene became a suspect, and he was arrested in Oklahoma while in possession of a .25-caliber pistol and ammunition. Upon his arrest as a person wanted in connection with Mr. Burnett's death, Mr. Greene told the arresting officer, "I'm your man," and he remarked that Ms. Burnett had caused Mr. Greene's wife to leave him and had wrongfully accused him of burning a building belonging to the Burnetts.

### 1. Aggravating circumstances

The error that we have discovered in our examination of the record under Ark. Sup. Ct. R. 4-3(h), as well as Mr. Greene's fifth point on appeal, both concern the State's presentation of evidence of "aggravating circumstances."

In a capital-murder case, the jury may impose the death penalty only if it finds beyond a reasonable doubt that one or more statutorily defined aggravating circumstances exist, outweigh any mitigating circumstances found to exist, and justify a sentence of death. Ark. Code Ann. § 5-4-603 (Repl. 1997). One of the aggravating circumstances upon which the jury based the recommended sentence in *Greene I* was that Mr. Greene was a person who had "previously committed another felony, an element of which was the use or threat of violence." Ark. Code Ann. § 5-4-604(3) (Repl. 1997).

In the sentencing phase of the first trial, the evidence presented on the "prior violent felony" point was Mr. Greene's conviction in North Carolina resulting from the murder of his brother. That conviction was later reversed by the North Carolina Supreme Court in *State v. Greene*, 438 S.E.2d 743 (N.C. 1994). The reversal of the North Carolina conviction was one basis for our setting aside Mr. Greene's death sentence in *Greene I*. The other was the failure to allow evidence of some of the mitigating circumstances submitted by Mr. Greene.

In the second sentencing proceeding — the one we are now reviewing — the State introduced testimony and documentary evidence in support of its claim that Mr. Greene had committed a "prior violent felony." Angela Dawn Blankenship, Mr. Greene's niece, testified that she was abducted by Mr. Greene on July 16, 1991, and forced to accompany him for two days and nights in his car in North Carolina. They ultimately stopped at the home of Tommy Greene, who was the brother of Jack Gordon Greene and Ms. Blankenship's mother. Ms. Blankenship witnessed Jack Gordon Greene shoot Tommy Greene on July 18, 1991. Steve Cabe, a North Carolina law-enforcement officer, testified about his investigation of the shooting. Through Mr. Cabe's testimony, the State introduced Tommy Greene's death certificate showing that he had died from five gunshot wounds on July 18, 1991.

The Trial Court rejected defense counsel's argument that the evidence was insufficient to establish that Mr. Greene had committed a previous "felony" in North Carolina and submitted the "prior violent felony" aggravating circumstance to the jury over defense counsel's objections. The Trial Court submitted the "especially cruel and depraved manner" aggravating circumstance

to the jury without objection. These were the two aggravating circumstances upon which the jury based its recommended sentence of death.

### a. Sufficiency of the evidence

When this Court reviews a death sentence, it must review the record in accordance with Ark. Code Ann. § 16-91-113(a) (1987) and Ark. Sup. Ct. R. 4-3(h) for all errors raised in the trial court that are prejudicial to the appellant regardless of whether the errors are raised on appeal. This review includes considering whether the evidence presented was sufficient to allow the jury to consider a statutory aggravating circumstance. *Collins v. State*, 261 Ark. 195, 221, 548 S.W.2d 106, 120-21 (1977).

Our focus is on the Trial Court's denial of Mr. Greene's motion for directed verdict and its submission to the jury of the "prior violent felony" circumstance over the objection that the evidence was insufficient to allow the jury to consider it. The brief contains no argument on this point, but defense counsel preserved the issue by making proper objections in the sentencing proceeding. We therefore may address the issue under Rule 4-3(h). *See Bragg v. State*, 328 Ark. 613, 629, 946 S.W.2d 654, 663 (1997); *Willett v. State*, 322 Ark. 613, 623-25, 911 S.W.2d 937, 942-43 (1995). We consider this sufficiency issue before addressing other alleged trial error, *Britt v. State*, 334 Ark. 142, 150, 974 S.W.2d 436, 439 (1998), and we conclude that the Trial Court erred by denying defense counsel's motion for a directed verdict on the issue of the "prior violent felony" aggravating circumstance.

We may affirm a jury's finding that an aggravating circumstance exists beyond a reasonable doubt only if the State has presented substantial evidence in support of each element of the aggravating circumstance. *Echols v. State*, 326 Ark. 917, 988, 936 S.W.2d 509, 546 (1996); *Sheridan v. State*, 313 Ark. 23, 30-32, 852 S.W.2d 772, 775-77 (1993). "Substantial evidence" is that evidence which is "forceful enough to compel reasonable minds to reach a conclusion one way or the other" and permits the trier of fact to "reach a conclusion without having to resort to specula-

tion or conjecture." *McGehee v. State*, 328 Ark. 404, 410, 943 S.W.2d 585, 588 (1997).

Here, the only evidence before the jury from which it could have concluded that Mr. Greene committed a prior felony involving violence was the testimony of Ms. Blankenship and Mr. Cabe and the death certificate of Tommy Greene. In his motion for directed verdict at the conclusion of the State's case, Mr. Greene's counsel argued that the State, in order to establish an aggravating circumstance, had attempted to conduct a "trial within a trial" by presenting evidence that Jack Gordon Greene killed Tommy Greene. Defense counsel asserted that Mr. Greene had not had an opportunity to defend against that allegation and that his right to due process of law was thus violated. Defense counsel then asserted that the evidence had not established that Mr. Greene's abduction of Ms. Blankenship amounted to a felony in North Carolina and that the jury would be left to *assume* that the conduct was felonious.

The prosecutor responded that the proof was "unrebutted" that Mr. Greene had killed his brother, and he asserted that the homicide was "obviously" and "clearly" a "previous felony." When the prosecutor argued that Mr. Greene's abduction of Ms. Blankenship also "[rose] to the level of a felony," the Trial Court questioned whether the prosecution had a copy of a North Carolina statute on the point, and the prosecutor replied that he could have the law "faxed" to him. No such statute was produced.

As the discussion continued, the Trial Court observed that it did not "know whether the actions that's been testified to here by Ms. [Blankenship] — concerning Mr. Greene to the young lady would be a felony or not." The Trial Court remarked that the State had produced evidence of the death of Tommy Greene and that the State "can argue either way." It ruled that the "prior violent felony" circumstance would be submitted to the jury.

Defense counsel then requested the Trial Court to instruct the jury not to consider the abduction of Ms. Blankenship in determining whether Mr. Greene had committed a prior violent felony in connection with the shooting of Tommy Greene. Defense counsel asserted:

> As I understand the State's theory of this case, [it] is that they not only wanted to prove up that particular fact [the abduction of Ms. Blankenship] as a felony, but also the particular fact of the death of Tommy Greene. It's a deception to the jury for them not to know that it is not to be considered in terms of the aggravating circumstance of another felony.

The Trial Court opined that defense counsel's request would require it to give separate "prior violent felony" instructions to the jury — one concerning the killing of Tommy Greene, and one concerning the abduction of Ms. Blankenship. The Trial Court denied the request and indicated it would give to the jury only one instruction concerning a prior violent felony.

At the close of the case, defense counsel again requested the Trial Court not to submit the "prior violent felony" aggravating circumstance to the jury on the ground that the State's evidence was insufficient to show that the acts allegedly committed by Mr. Greene in North Carolina constituted felonious conduct under the law of that jurisdiction. In a separate motion, defense counsel asserted that a mistrial was warranted on account of the State's failure to supply the jury with instructions on North Carolina law to guide it in determining whether Mr. Greene's conduct in North Carolina constituted a felony. Defense counsel also asked that, in the absence of any instructions on North Carolina law, the jury be admonished to disregard the testimony introduced by the State, including that from Ms. Blankenship and Mr. Cabe, in determining whether Mr. Greene had committed a prior violent felony.

The Trial Court denied defense counsel's motion for directed verdict and his request for a mistrial. The Trial Court remarked that the State was not required "to specifically prove the elements of that particular felony" and that, in addition, there was no requirement for "the State to prove beyond a reasonable doubt this particular aggravating circumstance." The Trial Court concluded that "there is certainly strong evidence submitted by the State to indicate that another homicide was committed by Mr. Greene" and that "the State's proof and presentation of the evidence here is sufficient to give this aggravating circumstance."

■ We cannot agree with the Trial Court's response to defense counsel's arguments. It is indeed the responsibility of the State to prove beyond a reasonable doubt each element of an aggravating circumstance, and it is the responsibility of the jury to determine whether the State has met its burden. The jury was so instructed in this case.

■ Thus, the State, in order to sustain the "prior violent felony" allegation, had to prove beyond a reasonable doubt the following elements: (1) that Mr. Greene "previously committed" (2) "another *felony*" (3) "an element of which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person." Ark. Code Ann. § 5-4-604(3) (Repl. 1997)(emphasis added).

■ ■ Although the statute no longer requires proof of a previous "conviction" of another felony, as the dissenting opinion observes, § 5-4-604(3) does require proof of a commission of a *felony*. Where, as here, a "statute is plain and unambiguous," we interpret it "to mean only what it says." *Files v. Arkansas State Hwy. & Transp. Dep't*, 325 Ark. 291, 296, 925 S.W.2d 404, 407 (1996). Construing § 5-4-604(3) "just as it reads," *Leathers v. Cotton*, 332 Ark. 49, 52, 961 S.W.2d 32, 34 (1998), without "adding to or changing the meaning of the language employed," *Vault v. Adkisson, Judge*, 254 Ark. 75, 77, 491 S.W.2d 609, 610 (1973), we have no doubt that the State in this case bore the burden of proving not merely that Mr. Greene committed prior acts of violence in North Carolina but that those acts constituted *felonies* under the law of that state. Even if we believed the statute to be ambiguous on this point, which we do not, our duty would be to construe the statute "strictly . . . with doubts resolved in favor of the defendant." *Davidson v. State*, 305 Ark. 592, 594, 810 S.W.2d 327, 328 (1991).

■ In the absence of proof that Mr. Greene previously committed *felonies* in North Carolina, the jury was required to find that the "prior violent felony" circumstance did *not* exist. Although, as the dissent observes, the State introduced evidence that Jack Gordon Greene abducted his niece and killed his brother, neither that evidence, nor any other proof offered by the

State, established that Mr. Greene's acts against his niece and brother were classified as felonies under North Carolina law. Mere proof that an accused has committed a violent act, in the absence of any evidence showing that the act is designated as a felony, does not satisfy the requirements of § 5-4-604(3).

The jury in this case was given nothing to permit it to make the necessary finding that Mr. Greene previously committed felonies in North Carolina, and we cannot assume that the jury knew how the North Carolina criminal code classifies particular crimes or was familiar with the "black letter law" definition of the term "felony" quoted by the dissent. For this Court to make such an assumption, or to permit such an assumption to be made by a trial court, would be remarkably slipshod and unworthy of any appellate tribunal.

As the State introduced no evidence on an essential element of the "prior violent felony" charge, the Trial Court should have directed a verdict on this aggravating circumstance and should not have submitted it to the jury. Our obligation, then, is to reverse the jury's finding that Mr. Greene committed a "prior violent felony."

The question arises how the State might have satisfied the requirements of § 5-4-604(3) in this case. Under common-law rules, the State would have been required to "prove" the North Carolina law. At common law, "[i]f there were a case at trial in which the law of another state played a part, that law whether statutory or common had to be proved like any other fact in the case." ROBERT A. LEFLAR, ET AL., AMERICAN CONFLICTS LAW § 130, at p. 356 (4th ed. 1986). "[N]o judicial notice was taken of the law of the other states." *Id.* at p. 357. "The standard method of proving the law of another state was by the testimony of witnesses skilled in that law, and that still remains a method of proof." *Id.* at p. 357. *See also* 1 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 59, at p. 294 (2d ed. 1994). If a party with the burden of proving foreign law failed to do so, he faced dismissal "with judgment for the defendant, on the theory that the plaintiff relying on foreign law had failed to prove an essential part of his case." LEFLAR, *supra*, at p. 358.

█ Arkansas, like other states, has departed from the strict approach of the common law — which required "proof" of foreign law as a "fact" in the case — and has adopted statutes and rules permitting or requiring the taking of judicial notice of foreign law and providing procedures for doing so.

For example, Ark. Code Ann. § 16-40-104 (Repl. 1994) provides that "[t]he courts of this state shall take judicial knowledge of the laws of other states." In addition, Ark. R. Civ. P. 44.1, entitled "Determination of Foreign Law," provides as follows:

> (a) *Notice.* A party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this State shall give notice in his pleading or other reasonable written notice.
>
> (b) *Materials to Be Considered.* In determining the law of any jurisdiction or governmental unit thereof outside this State, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence.
>
> (c) *Court Decision and Review.* The court, not the jury, shall determine the law of any jurisdiction or governmental unit thereof outside this State. Its determination is subject to review on appeal as a question of law.

Although that rule is to be applied in civil cases, it makes clear this Court's position that foreign law is unlike the law of this State of which the courts presumably have inherent knowledge.

Finally, Ark. R. Evid. 201 generally provides for the taking of "judicial notice" as follows:

> *Rule 201. Judicial notice of adjudicative facts.*
>
> (a) *Scope of Rule.* This rule governs only judicial notice of adjudicative facts.
>
> (b) *Kinds of Facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resert [resort] to sources whose accuracy cannot reasonably be questioned.

(c) *When Discretionary.* A court may take judicial notice, whether requested or not.

(d) *When Mandatory.* A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e) *Opportunity to be Heard.* A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(f) *Time of Taking Notice.* Judicial notice may be taken at any stage of the proceeding.

(g) *Instructing Jury.* The court shall instruct the jury to accept as conclusive any fact judicially noticed.

In this instance, the Trial Court could have ascertained whether the acts of Mr. Greene against his niece and brother in North Carolina constituted felonies in that state and provided an instruction, based on its judicial notice, to the jury on the point. Then, if the jury were to find that the abduction and homicide had occurred, it would have had a basis for making the ultimate finding under § 5-4-604(3) that a "prior violent felony" had occurred. Theoretically, at least, the State might have established the "felony" element of § 5-4-604(3) in this manner, considering that judicial notice constitutes "evidence of the fact so noticed." *Cordova v. State,* 675 So.2d 632, 635 (Fla.App. 3 Dist. 1996). *See Line v. Line,* 119 Md. 403, 86 A. 1032, 1035 (1915)(stating judicial notice "stands for and takes the place of evidence").

The Trial Court did not take judicial notice of North Carolina law, however, and it ignored defense counsel's request that the jury be instructed on North Carolina law. Thus, the jury was left to determine whether the homicide in North Carolina or the abduction there constituted a felony under the law of that state in the absence of either (1) direct evidence of North Carolina law, or (2) an instruction by the Trial Court based upon its judicial notice of North Carolina law. Under these circumstances, we can hardly say that the evidence before the jury was sufficient to uphold its finding that Mr. Greene committed a "prior violent felony" under § 5-4-604(3).

■ If the Trial Court had judicially noticed the North Carolina statute, it then would have been necessary for the judge to provide the type of instruction to the jury discussed above. As mentioned, judicial notice is nothing other than "evidence of the fact so noticed." *Cordova v. State, supra.* If judicial notice is "evidence," then, like any other kind of evidence, it cannot aid the State in establishing an essential element of the charge unless it is presented to the jury.

That is precisely how judicial notice was used in *Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977). In *Wallis*, the defendant in an automobile collision case sought to rely on a Missouri statute. The defendant apprised the judge of the statute, and the judge quoted it to the jury in an instruction. We said the defendant had followed the correct procedure for introducing foreign law and that the instruction had been properly given despite the plaintiff's contention that there was no "proof" of Missouri law in the record. Our response was that it was "only necessary to plead foreign law, not prove it." 261 Ark. at 626, 550 S.W.2d at 455.

■ In the case at bar, the State did not apprise the Trial Court of, or "plead," the North Carolina statutes. The jury in this case, unlike the jury in *Wallis*, received no instruction on foreign law. The dissenting opinion states that the record in this case does not foreclose the possibility that the Trial Court "look[ed] at the apposite North Carolina statutes . . . prior to instructing the jury on aggravating circumstances." There is nothing in the record indicating that the judge took judicial notice of the North Carolina statutes. Even if he might have read them, perhaps covertly, he did not relay the contents of the North Carolina statutes to the jury. The judge's undisclosed taking of judicial notice, if that is what occurred here, would not have satisfied the "felony" element of § 5-4-604(3), and it, again, left the jury to decide whether the conduct in question constituted a North Carolina felony with neither evidence of the applicable law nor any instruction on it whatsoever.

Given the failure of the State to introduce the North Carolina statutes at trial, whether through direct evidence or a sugges-

tion of, or request for, judicial notice, the question then becomes whether this Court, in deciding this appeal, may, by taking judicial notice of the North Carolina law, determine that Mr. Greene's acts against his niece and brother were "felonies" and affirm the jury's finding of a "prior violent felony" despite the fact that the jury received neither evidence on the point nor an instruction from the Trial Court based upon its judicial notice of North Carolina law. We answer this question in the negative.

"[T]he general rule as commonly stated would seem to be that the appellate court will not take judicial notice of a fact unless it was brought to the attention of the trial court." Hobart Taylor, Jr., *Comment—Evidence—Judicial Notice by Appellate Courts of Facts and Foreign Laws Not Brought to the Attention of the Trial Court*, 42 MICH. L. REV. 509, 511 (1943). The comment cites *Wood v. Northwestern Fire Ins. Co.*, 46 N.Y. 421 (1871), for the proposition that an appellate court will "not find a fact which had not been found below, since that would be an intrusion into the province of the trial court." *Comment, supra*, at pp. 513-14.

As the Supreme Court of Wyoming observed, "[j]udicial notice upon appeal should not . . . be invoked to relieve parties of their duty to present adequate evidence at the trial . . . ." *37 Gambling Devices (Cheyenne Elks Club and Cheyenne Music and Vending, Inc.) v. State*, 649 P.2d 711, 716 (Wyo. 1985). The court construed language identical to our Ark. R. Evid. 201(d), which mandates the taking of judicial notice upon a party's request and his supplying of necessary information, to mean that an appellate court is required to take judicial notice on appeal "only when timely request has been made to the trial court and the necessary information made a part of the record on appeal." *Id.* at 717.

The United States Court of Claims endorsed a similar view and declined to take judicial notice of facts on appeal because the request had "come[ ] too late":

> Judicial notice is merely a way of introducing evidence without resort to the ordinary formalities; it does not circumvent the requirements of orderly judicial procedure, and one of those requirements is that appellate tribunals should ordinarily consider

only what has been properly presented to the trier of fact below. Since these documents were not presented in a timely fashion to the Commission, and no good excuse for this neglect has been suggested, it would be inappropriate for this court to include them in the record on appeal, or to consider them.

*Turtle Mountain Band of Chippewa Indians v. United States*, 490 F.2d 935, 945 (Ct.Claims 1974). Other decisions are in accord. *See, e.g., Johnson v. Chater*, 108 F.3d 942 (8th Cir. 1997); *United States v. Bonds*, 12 F.3d 540 (6th Cir. 1993); *United States v. O'Dell*, 805 F.2d 637 (6th Cir. 1986).

In a recent case, this Court considered the general question of taking judicial notice on appeal when the issue was whether sufficient evidence supported a criminal conviction. In *Houston v. State*, 293 Ark. 492, 495, 739 S.W.2d 154, 156 (1987), we observed that Ark. R. Evid. 201

> deals with judicial notice of facts. The rule does not expressly limit the taking of judicial notice to the trial court. This court has taken judicial notice of facts which were not presented to the trial court. *See City of Van Buren v. Highway Water Co.*, 270 Ark. 466, 605 S.W.2d 419 (1980)(date of adoption of rules by the Public Service Commission); *Rogers v. State*, 265 Ark. 945, 582 S.W.2d 7 (1979)(a circuit judge who might have offered testimony is now deceased); *Renfro v. State*, 264 Ark. 601, 573 S.W.2d 53 (1978)(Clay County is geographically located in the Second Judicial District).
>
> In the case of *Pascall v. Smith*, 263 Ark. 428, 569 S.W.2d 89 (1978)(substitute opinion on rehearing), however, we held that it would be impermissible for this court to take judicial notice of a fact not presented to the trial court. There, the appellant had demurred to the appellee's claim of adverse possession, saying the appellee had not offered sufficient evidence of the date he gave notice of his adverse claim. The appellee had presented evidence that he had once spoken with the appellant about his claim, and stated that, although he could not remember the date of their conversation, they had also spoken about the recent death of a local sheriff. In our original opinion in the case we took judicial notice of the Secretary of State's records showing that the sheriff had died in February, 1966, and found in favor of the appellee. However, in the substitute opinion we declared that it was imper-

missible to take judicial notice of a fact not presented to the trial court.

Likewise in the case before us now we are asked to take judicial notice of a fact not presented at the trial where the appellant challenges the sufficiency of the evidence. *Where a party challenges the sufficiency of the evidence to support the verdict, the opposing party may not offer additional evidence on appeal by way of judicial notice for the purpose of bolstering the sufficiency of its evidence. To hold otherwise would relieve the party of the burden of making its case at trial.* [Emphasis added.]

██ The *Houston* case is directly applicable to this one. If we will not judicially notice facts for the first time on appeal so that the State may not *bolster* the sufficiency of the evidence, we surely should not do so where the State seeks to *cure* a deficiency in its proof and "repair" the "gaps" in its "evidentiary presentation" before the Trial Court. *City of New Brunswick v. Borough of Milltown*, 686 F.2d 120, 131 n.15 (3d Cir. 1982).

This case differs from the *Houston* case in one respect, however. In the *Houston* case, we said we would not judicially notice *facts* for the first time on appeal. Here, the issue is whether we should judicially notice a sister state's *law* for the first time on appeal and determine for ourselves, through some form of "appellate factfinding," whether Mr. Green's violent conduct was "felonious" under North Carolina law. The answer, we believe, is still no.

██ As Professor Leflar observed, "[i]f relevant foreign law" is "not called to the trial court's attention," it is "too late on appeal to raise the point for the first time." LEFLAR, *supra*, at p. 360 and n. 21. "[A]s in cases involving nonlegal facts, the weight of judicial authority would seem committed to the view that the statutory or common-law rule must be properly brought to the attention of the trial court if counsel desires notice by the appellate court." *Comment*, 42 MICH. L. REV. 509, 517-18.

We endorsed that position in *St. Louis & S.F. Ry. Co. v. Black*, 142 Ark. 41, 218 S.W. 377 (1920). Mr. Black alleged that his bales of cotton, which were placed by him on a railroad platform in Oklahoma for transport by the defendant Railroad, had burned due to a fire caused by sparks emanating from a train

owned by the Railroad. An Oklahoma statute making a railroad company liable for any fire thus caused was the sole basis of liability stated and proven as the basis of the judgment in favor of Mr. Black. On appeal, the Railroad sought to assert that Oklahoma case law interpreted the statute as being inapplicable to a case in which a bailee caused injury to a bailor's goods. Although we did not refer to judicial notice, we declined to consider the Oklahoma law on the point because it had not been presented to the Trial Court or instructed to the jury.

In an especially instructive case, *People v. Jackson*, 7 Cal.App.4th 1367, 10 Cal.Rptr.2d 5 (Cal.App. 2 Dist. 1992), the defendant received an enhanced sentence on account of his commission of three previous "serious felonies." The defendant challenged on appeal the sufficiency of the evidence supporting the second of the State's prior-felony allegations — that he had committed residential burglary. Under California law, residential burglary, but not any other type of burglary, qualified as a "serious felony." The appellate court agreed that the State's proof, while showing that the defendant had committed burglary, failed to show that he had committed *residential* burglary. The State maintained that the appellate court could sustain the judge's finding by judicially noticing that the conviction had been for residential burglary, but the court refused:

> [T]he attorney general, despite virtually conceding the *trial* death of the allegation, argues that, like Lazarus, it can be raised from that death.
>
> This resuscitative feat, the attorney general contends, may be accomplished either by appellate judicial notice . . . or appellate fact finding . . . . 10 Cal.Rptr.2d at 8.

The court "decline[d] to judicially notice . . . or factually find . . . that the subject prior burglary was 'of an inhabited dwelling house.'" *Id.* at 9. The court continued:

> To do so would do "violence to the elementary principle that the function of an appellate court, in reviewing a trial court judgment on direct appeal, is limited to matters contained in the record of the trial proceedings." "An appellate court may not on direct appeal from a judgment take judicial notice of or consider matters that were not considered by the trial court." [The State]

cites no authority for the proposition that an essential element, not proved at trial, may be proved on appeal. *Id.* at 9 (citations omitted).

A similar situation arose in *Straub v. State,* 567 N.E.2d 87 (Ind. 1991). There, the defendant was convicted in Indiana under a habitual-offender statute upon proof that he had been previously convicted of carrying a concealed weapon in Ohio. The habitual-offender law required proof that the prior conviction had been for a *felony,* but the State failed to satisfy that requirement. In reversing, the Supreme Court of Indiana noted that the State had "not ask[ed] the trial court to take judicial notice of Ohio statutes," 567 N.E.2d at 95, and the Supreme Court did not take judicial notice of that law on appeal.

Other decisions support the view that an appellate court should not judicially notice foreign law where it has not been raised in the trial court. *See, e.g., Ruff v. St. Paul Mercury Ins. Co.,* 393 F.2d 500, 502 (2d Cir. 1968)(refusing to take judicial notice of Liberian law for first time on appeal); *Strout v. Burgess,* 144 Me. 263, 68 A.2d 241 (1949); *Turner v. Missouri-Kansas-Texas R. Co.,* 346 Mo. 28, 142 S.W.2d 455, 458 (1940) (refusing judicial notice of a Kansas statute of limitation "because it was neither pleaded nor introduced in evidence at the trial below"); *Watkins v. Watkins,* 160 Tenn. 1, 22 S.W.2d 1, 3 (1929); *Lennon v. Cohen,* 264 Mass. 414, 163 N.E. 63, 67-68 (1928)("An important question of foreign law . . . cannot be raised as of right at the argument in this court for the first time; and this court cannot thus be required to make a decision about it by taking judicial notice of it."); *Christy v. Wabash R. Co.,* 195 Mo. App. 232, 191 S.W. 241, 245 (1917).

 As Justice George Rose Smith observed, a party who wishes to rely on judicial notice of laws should follow the "proper procedure" of "calling attention" to the law in the trial court. *St. Paul Ins. Co. v. Touzin,* 267 Ark. 539, 543-44, 592 S.W.2d 447, 450 (1980). Even if it is now unnecessary to "prove" foreign law, it still must be pleaded. *Wallis v. Mrs. Smith's Pie Co.,* 261 Ark. 622, 626, 550 S.W.2d 453, 455 (1977).

 We decline to repair the gap in the proof presented by the State at trial by taking judicial notice on appeal of North Car-

olina law and applying it to the facts that *were* established by the State. Although our statutes and rules may speak in "mandatory" terms regarding the taking of judicial notice of foreign law, we, like other courts, do not interpret these provisions to mean an appellate court is obligated to take judicial notice of foreign law when it has not been raised first in the trial court. *See Comment, supra*, at p. 519 (stating that courts with mandatory statutes "have not uniformly recognized an obligation to take judicial notice of foreign law" for the first time on appeal). *See also Corbett v. Terminal R. Ass'n of St. Louis*, 336 Mo. 972, 82 S.W.2d 97, 101 (1935).

■ It may seem hypertechnical for us not to substitute for the Trial Court and take judicial notice in this appeal of the pertinent North Carolina criminal statutes, which, we note, have not been presented to us. We decline to take that direction, however, because we cannot relieve the State of its responsibility to establish at trial, by evidence or a theoretically acceptable substitute, such as judicial notice, every element of the "prior violent felony" charge beyond a reasonable doubt. The dissent claims that our decision is based upon "pure formality." There is no question, however, that reversal is *always* required if an element of an aggravating circumstance is held not to be supported by sufficient evidence. *Miller v. State*, 280 Ark. 551, 660 S.W.2d 163 (1983); *Williams v. State*, 274 Ark. 9, 621 S.W.2d 686 (1981).

■ We have no choice but to reverse the jury's finding of a "prior violent felony." Although the jury also found that the "especially cruel and depraved manner" aggravating circumstance existed, we may not conduct harmless-error review in this case because the jury found mitigating circumstances to exist. Ark. Code Ann. § 5-4-603(d) (Repl. 1997).

### b. Double jeopardy — "prior violent felony"

Although we hold that the Trial Court should not have submitted the "prior violent felony" aggravating circumstance to the jury due to insufficiency of the evidence, we briefly address Mr. Greene's fifth point on appeal, which also concerns that aggravating circumstance.

Mr. Green contends that the Double Jeopardy provision of the United States Constitution, presumably Amendment 5 or 14, precluded the State from showing, in the resentencing hearing, that he had committed a prior violent felony by evidence not introduced at his first sentencing proceeding. The State's response is that no objection was made at the time the testimony by Ms. Blankenship and Mr. Cabe was presented and that the Double Jeopardy issue is therefore not preserved.

Mr. Green brought the argument to the attention of the Trial Court through a pretrial motion to prohibit the State from establishing that aggravating circumstance through evidence not introduced at his first sentencing proceeding. The argument is therefore preserved for review, but we hold that it is meritless.

If we had held in *Greene I* that the evidence presented by the State in the first trial was legally insufficient to justify the imposition of the death penalty, and had thereby "acquitted" Mr. Greene of the death penalty, the Double Jeopardy Clause would have barred a second death-penalty proceeding. *See Poland v. Arizona*, 476 U.S. 147 (1986); *Bullington v. Missouri*, 451 U.S. 430 (1981).

Our decision in *Greene I*, however, was not based upon insufficiency of the evidence. Rather, we reversed on the basis of *Johnson v. Mississippi*, 486 U.S. 578 (1988), a decision by the United States Supreme Court that was followed by this Court in *Sanders v. State*, 308 Ark. 178, 824 S.W.2d 353 (1992). Those cases hold that a death sentence that is predicated upon proof of the defendant's conviction of an unrelated prior violent felony must be vacated if the prior conviction is reversed subsequent to the imposition of the death penalty.

In *Greene I*, we did not hold that the evidence was insufficient to justify the imposition of the death penalty. Neither the subsequent reversal of the North Carolina conviction, nor our setting aside Mr. Greene's death sentence in *Greene I*, "acquitted" Mr. Greene for Double Jeopardy purposes. Thus, the State was free to reassert the "prior violent felony" charge in the resentencing hearing and introduce new evidence in support of it.

## 2. Photographs

Mr. Greene alleges in his first point on appeal that the Trial Court erred by admitting into evidence State's Exhibits Nos. 2, 14, 29, and 30, which he describes as "inflammatory and cumulative photographs of the victim." We affirm on this point.

The first photograph at issue, Number 2, is a black and white photograph of Mr. Burnett as he was found in his home. Number 2 shows Mr. Burnett lying on a sofa with his feet bound and his hands behind his back, presumably also bound. A similar photograph was introduced as State's Exhibit No. 1, showing the victim from above as opposed to the profile depicted in Number 2. The photographs were not cumulative, as they showed the victim from different perspectives. *Hodge v. State,* 332 Ark. 377, 392, 965 S.W.2d 766, 773 (1998).

Number 14 is taken, apparently, in the State Medical Examiner's laboratory. It displays the fact that, in accordance with the testimony of the State Medical Examiner, Mr. Burnett was shot in the head from above. It also displays the various wounds about which the Medical Examiner testified. Number 14 thus "tend[ed] to shed some light on any issue" and was "useful to enable a witness to testify more effectively." *Goff v. State,* 329 Ark. 513, 521-22, 953 S.W.2d 38, 43 (1997).

Exhibit Nos. 29 and 30 are indeed gruesome. Both are autopsy photographs of the sort that were found objectionable in *Berry v. State,* 290 Ark. 223, 718 S.W.2d 447 (1986). Number 29 is a photograph of a portion of Mr. Burnett's skull. According to the Medical Examiner, it displays a type of bullet-entry wound indicating that Mr. Burnett was shot from above and at an angle. Number 30 depicts one of Mr. Burnett's lungs. It was used to show that Mr. Burnett was aspirating at the time wounds were being inflicted upon him, and thus it was useful in proving the State's claim that the crime caused Mr. Burnett to suffer and was thus committed in "an especially cruel or depraved manner."

The difference between this case and *Berry v. State, supra,* is that the photographs were not repetitive.

> This court has often stated that the admission and relevancy of photographs is a matter within the sound discretion of the trial court, and the mere fact that photos are inflammatory will not render them inadmissible. *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996). Even the most gruesome photos may be admissible if they tend to shed some light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand testimony. *Jones v. State*, 329 Ark. 62, 947 S.W.2d 339 (1997). Other acceptable purposes are to show the condition of the victims' bodies, the probable type or location of the injuries, and the position in which the bodies were discovered. *Id.*

*Goff v. State*, 329 Ark. 513, 521-22, 953 S.W.2d 38, 43 (1997). "[T]he admissibility of photographs is a matter within the sound discretion of the trial court, and the trial court's ruling will not be reversed absent an abuse of discretion." *Sanders v. State*, 317 Ark. 328, 339, 878 S.W.2d 391, 397 (1994). There was no abuse of discretion in this instance.

### 3. Requests for hearing on mental evaluation and for continuance

For his second and third points on appeal, Mr. Greene asserts that the Trial Court erred by (1) refusing to hold a hearing in response to his objection to a mental evaluation performed by State Hospital personnel, and (2) denying the request of his counsel, William M. Pearson, for a continuance. The facts surrounding each point are closely related, and thus we address them together. We hold that both points have merit and require reversal.

One of the Arkansas Public Defender Commission attorneys representing Mr. Greene moved on January 13, 1995, that Mr. Greene be committed to the State Hospital for a mental examination. An order committing Mr. Green for that purpose was entered on February 3, 1995. On July 24, 1995, an evaluation was yet to be done, and Mr. Greene's attorneys asked that the proceedings be suspended until the evaluation could occur. On July 26, 1995, State Hospital personnel interviewed Mr. Greene at the prison where he was incarcerated. The resulting report was filed on August 2, 1995.

On August 10, 1995, Mac Carder, one of the Arkansas Public Defenders Commission ("APDC") attorneys representing Mr. Greene, objected to the report on the ground that the examination had lasted only one and one-half hours, that Mr. Greene had not been committed to the State Hospital as ordered by the Trial Court, and that prison guards had been present during the examination interview. A hearing on the matter was requested, and the Trial Court set the hearing for September 1, 1995. A subsequent letter from the Trial Court to counsel indicated that the hearing would be held on August 31, 1995. An order entered August 24, 1995, provided for Mr. Greene to be transferred from the prison so that he could attend the August 31 hearing.

The hearing on the competency report did not occur. There is nothing in the record showing that the hearing was cancelled or that counsel withdrew the request. It may simply have gotten lost in the wake of Mr. Greene's switching lawyers that began shortly before the hearing was to have been held. Attorney Steve Jackson entered his appearance as Mr. Greene's counsel on August 25, 1995, and sought, and later received, a continuance. Trial was moved from September 18, 1995, to November 13, 1995. The APDC lawyers moved to be relieved as counsel on August 31, 1995, and asserted that they had received word from Mr. Greene on August 28, 1995, that he was terminating their services. The APDC's motion was granted on August 31, 1995.

Mr. Jackson was later terminated, and Mr. Greene indicated he would defend himself. The Trial Court appointed attorneys William M. Pearson and David L. Gibbons to be on call as "advisors" should Mr. Greene need them. Mr. Greene then hired Dale Adams, who entered an appearance on November 9, 1995, and had the trial continued from November 13, 1995, to February 26, 1996.

Mr. Pearson, who ultimately represented Mr. Greene at the resentencing procedure and who represents Mr. Greene in this appeal, was finally appointed during a hearing on January 31, 1996, with the resentencing procedure set for February 26, 1996. During oral argument of this case before this Court, Mr. Pearson said he first learned of the request for, setting of, and failure to

hold the hearing on the objections to the mental evaluation as he was preparing this appeal, and thus he had no reason to pursue the matter before the Trial Court. The record does not demonstrate the contrary, and we have no reason to suggest that Mr. Pearson was in any manner negligent with respect to the matter.

The State argues that the hearing issue is barred because Mr. Greene obtained no hearing; made no "further objection" to the denial of a hearing; and obtained no ruling on the adequacy of the report. The point is, however, that Mr. Greene obtained no ruling on the report's adequacy because no hearing was provided in which he could *make* an objection. The failure to hold the hearing constitutes the prejudice.

 The applicable statute clearly obligated the Trial Court to hold the hearing. It provides that, if the report filed under Ark. Code Ann. § 5-2-305 is "contested," as it was by defense counsel here, "the court *shall* hold a hearing on the issue." Ark. Code Ann. § 5-2-309(c) (Repl. 1997)(emphasis added).

As we discuss below, there is no requirement that counsel must pursue a hearing on objections to a mental evaluation once the hearing has been requested. Obviously the matter was brought to the attention of the Trial Court. Even if there were such a requirement, however, nothing in the transcript from the January 31 hearing reveals whether Mr. Pearson knew or could have known of the fact that the hearing had been requested and set but not held. There is nothing in the record to show that Mr. Pearson, upon his appointment on January 31, 1996, received the transcript from the August 10, 1995 hearing in which the objection to the mental evaluation and request for a hearing were made. We also do not know whether Mr. Pearson was, at that time, given the correspondence from the Trial Court referring to an August 31 hearing.

The State asserts that reversal is not required because Mr. Greene has not demonstrated any prejudice flowing from the denial of a hearing. It also cites *Hufford v. State*, 314 Ark. 181, 861 S.W.2d 108 (1993), for the proposition that "substantial compliance" with the examination·procedures is all that is required.

██ Generally speaking, appellants must show prejudice in order to prevail, *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997), but the denial of a hearing here deprived Mr. Greene of the opportunity to demonstrate errors in the evaluation process. Despite the State's assertion, Mr. Greene alleges breaches of the court's order committing him for a mental evaluation and of the governing statute, and a hearing was required so that the Trial Court could evaluate those claims.

In *Jacobs v. State*, 294 Ark. 551, 744 S.W.2d 728 (1988), we were not faced, as we are here, with a judge's denial of a hearing requested pursuant to § 5-2-309(c). Rather, the question in *Jacobs* was whether the judge erred by denying defense counsel's request for a full mental evaluation and report. We answered "yes" and reversed because a preliminary report raised a reasonable doubt about the defendant's competency to stand trial. Here, the judge allowed for the mental evaluation and report but failed to hold the follow-up hearing in which the defendant could *contest* the report.

In an analogous situation, we held in *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997), that the Trial Court erred when it admitted the defendant's custodial statements without conducting a hearing on the defendant's suppression motion, as it had been requested to do. The statute there, like the one applicable here, provided in mandatory terms that a trial court must hold a hearing on a motion to suppress. Although the statements were later admitted without objection, and although there was never a subsequent request for a hearing or objection, we said that the pretrial motion to suppress, by itself, was sufficient to raise the issue and trigger the judge's statutory obligation to hold the hearing. We said, "We know of no authority, and the State cites none, that requires a defendant to raise the question of the admissibility of his incriminating custodial statements more than once." 329 Ark. at 399-400, 948 S.W.2d at 408. Employing the "limited-remand procedure," we sent the case back to the Trial Court so that it could hold a hearing to determine the admissibility of the statements and order a new trial if the statements were found to have been made in the absence of a knowing and intelligent waiver.

We agree with Mr. Greene and hold that the Trial Court committed reversible error by failing to hold a hearing on his objections to the mental evaluation. A "limited remand" would be appropriate if this were the only point on which we were reversing. A full resentencing hearing, however, is necessary in view of our holding on the "prior violent felony" point and our holding on Mr. Greene's argument concerning the denial of his counsel's motion for continuance, which we address next.

We conclude there is merit to Mr. Green's point alleging error in the Trial Court's refusal of Mr. Pearson's persistent requests for a continuance in view of the short period of time between his appointment and the resentencing proceeding. In the hearing on January 31, 1996, Mr. Pearson said there were aspects of the record in the case, which was then set for resentencing less than one month hence, of which he was ignorant. He advised the Trial Court that he would need time to review everything and prepare for trial. The Trial Court made it clear that no continuance could be expected because of Mr. Greene's actions in hiring and dismissing counsel and thus causing earlier delays. In response to Mr. Pearson's concern about whether all items previous counsel had raised had been decided, the Trial Court said "the things that have accumulated through all this time deal mainly with motions dealing with constitutional issues and questions of law that the Court has basically ruled on."

Mr. Pearson moved for a continuance on February 13, 1996. Although nothing in the motion reveals the transcripts and records he had received by that point, the motion recited that Mr. Pearson had determined that the case would involve "complicated and protracted preparation to obtain and review all matters, Motions, records, or otherwise compiled at the prior trial and in anticipation of this trial . . . ."

Mr. Pearson also filed on February 13, 1996, a "motion to procure transcript of all pre-trial hearings." The motion recited that counsel had learned "that numerous written, as well as oral, Motions have been made in Defendant's behalf." The motion stated that counsel was "unaware of this Court's rulings regarding same." Counsel asserted that he was entitled "to know all matters,

Motions, rulings and anything pertaining to all pre-trial proceedings conducted against Defendant." He requested that the Trial Court "order and direct the Court Reporter in this cause to prepare a transcript of all pre-trial proceedings conducted against Defendant" since the issuance of our mandate in *Greene I.*

The Trial Court denied the motion for continuance on February 14, 1996. Another pretrial hearing occurred on February 19, 1996. Mr. Pearson reiterated his grounds for a continuance.

 We have often held that

> [t]he burden is on the movant to show good cause for a continuance. *Oliver v. State*, 312 Ark. 466, 851 S.W.2d 415 (1993). A motion for a continuance is addressed to the discretion of the trial judge and will not be reversed absent an abuse of discretion. *Verdict v. State*, 315 Ark. 436, 868 S.W.2d 443 (1993). The burden of proving an abuse of discretion due to prejudice resulting from the denial of a continuance is upon the appellant. *Henderson v. State*, 310 Ark. 287, 835 S.W.2d 865 (1992). Prejudice is not presumed in this context; instead, an appellant must demonstrate prejudice before this court will consider a trial court's denial of a continuance to be an abuse of discretion. *King v. State*, 314 Ark. 205, 862 S.W.2d 229 (1993).

*Sanders v. State*, 317 Ark. 328, 340, 878 S.W.2d 391, 398 (1994).

Although we, and the Court of Appeals, have acknowledged that a last-minute change in counsel *may* occasion, or require, a continuance in order to give the attorney time to prepare, *Leggins v. State*, 271 Ark. 616, 609 S.W.2d 76 (1980); *Pickens v. State*, 6 Ark. App. 58, 638 S.W.2d 682 (1982), those cases concerned whether a last-minute request to change counsel should have been granted. A factor to consider in making that determination is whether the change in counsel will necessitate a continuance.

 We agree with Mr. Greene's argument that, once the Trial Court has determined that a change in counsel is to be permitted, the new counsel must be accorded sufficient time to prepare for trial. In *Leggins v. State, supra,* the issue was whether the Trial Court erred when it refused to allow the defendant to dis-

miss his court-appointed attorney in favor of one hired by him. The request was made some two weeks prior to the date set for trial. We held that the Trial Court had not abused his discretion in refusing the request, and we wrote: "Although appellant did not specifically request a postponement of his trial, the trial court appropriately treated his request as a motion for continuance since a change of attorneys so close to trial would have required the granting of one." 271 Ark. at 618, 609 S.W.2d at 78.

▪▪▪ True, the proceeding for which Mr. Pearson needed time to prepare was not a full-blown capital murder trial, but there was a large record to be reviewed in order that Mr. Greene have the full benefit of counsel in a proceeding to determine life or death. We understand the Trial Court's frustration with the changes in counsel, but we conclude that, once the ultimate change in counsel was permitted, it was an abuse of discretion to permit Mr. Pearson less than a month to prepare, especially when it was apparent, or at least suggested, that he had not received all of the record as late as eleven days prior to the proceeding.

### 4. Constitutionality of death-penalty statute

Mr. Greene asserts that the Trial Court erred when it refused to declare Ark. Code Ann. § 5-4-603 (Repl. 1997) unconstitutional. He argues that the statute is unconstitutional because it provides for the mandatory imposition of the death penalty and does not allow the jury to show mercy to a defendant. A plain reading of the statute shows Mr. Greene's argument to be erroneous. Section 5-4-603(a) indeed provides that the jury "shall" impose the death penalty but only if it returns the following three written findings:

(1) Aggravating circumstances exist beyond a reasonable doubt; and

(2) Aggravating circumstances outweigh beyond a reasonable doubt all mitigating circumstances found to exist; and

(3) Aggravating circumstances *justify* a sentence of death beyond a reasonable doubt [emphasis added].

Section (b) of the statute directs the jury to impose a sentence of life imprisonment without parole if it finds that

(1) Aggravating circumstances do not exist beyond a reasonable doubt; or

(2) Aggravating circumstances do not outweigh beyond a reasonable doubt all mitigating circumstances found to exist; or

(3) Aggravating circumstances do not justify a sentence of death beyond a reasonable doubt.

Under subsection (c), the court must impose a sentence of life imprisonment without parole if the jury fails to make all the findings required by subsection (a).

Under subsection (a), the jury may "show mercy" simply by finding that the aggravating circumstances, even though they exist and "outweigh" the mitigating circumstances, do not "justify" imposition of the death sentence. We have made this observation in numerous cases and have repeatedly rejected the very argument Mr. Greene raises here. *Jackson v. State*, 330 Ark. 126, 131, 954 S.W.2d 894, 896 (1997); *Nooner v. State*, 322 Ark. 87, 106-07, 907 S.W.2d 677, 687 (1995). We affirm on this point.

### 5. Mistrial

Mr. Greene has raised a further point concerning the closing argument by the prosecution in the resentencing proceeding. The Trial Court sustained defense counsel's objection to the argument at issue and instructed the jury to disregard it. As we are reversing and remanding on other points, we need not address Mr. Greene's assertion on appeal that a mistrial was warranted because we assume, in light of the Trial Court's sustaining of the objection and instruction to the jury, that the argument will not be repeated at any subsequent resentencing proceeding.

### 6. Conclusion

We remand this case for a hearing to be held as required by Ark. Code Ann. § 5-2-309(c), and, should the State continue its pursuit of the death penalty, for a subsequent resentencing proceeding consistent with this opinion.

Reversed and remanded.

BROWN, J., concurs in part and dissents in part.

ROBERT L. BROWN, Justice, concurring in part; dissenting in part. The majority reverses this case in part because the North Carolina statutes that make kidnapping and murder felonies under North Carolina law were not introduced into evidence. I dissent from that portion of the opinion.

The following section of our aggravating-circumstance statute is at issue:

> (3) The person previously committed another felony, an element of which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person. . . .

Ark. Code Ann. § 5-4-604(3) (Repl. 1997). The majority reads two additional criteria into § 5-4-604(3):

- that the actual North Carolina felony statute must be introduced into evidence;
- that the trial judge must instruct the jury on that specific felony statute.

It is obvious from a plain reading of the statute that neither criterion is required.

Prior to 1977, the predecessor statute to § 5-4-604(3) required *conviction* of a violent felony to qualify as an aggravator. *See* Ark. Stats. Ann. § 41-4711(b) (Supp. 1973). That was changed in 1977, and now the statute only requires that a defendant *commit* a felonious act. Here, the testimony from two witnesses, Angela Blankenship and Steve Cabe, described in vivid and graphic detail Greene's kidnapping of his niece and his shooting of

his brother in North Carolina. What constitutes a felony is black letter law: "A crime of a graver or more atrocious nature than those designated as misdemeanors. Generally an offense punishable by death or imprisonment in [a] penitentiary." BLACK's LAW DICTIONARY (6th ed. 1990) (citations omitted). It is beyond serious dispute that kidnapping and murder fall readily into the felony category.

Arkansas law provides that a court may take judicial notice of the laws in other states. *See* Ark. Code Ann. § 16-40-104 (Repl. 1994). *See also* Ark. R. Civ. P. 44.1; Ark. R. Evid. 201. Section 16-40-104 amends the common law and casts in stone the General Assembly's preference that our courts recognize the laws of other states, without requiring that those laws actually be proved or placed into evidence. Indeed, in *Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977), this court highlighted the point that the trial court could instruct the jury on Missouri law without having the precise Missouri statute introduced into evidence. The Arkansas statute and *Wallis* case take care of the first aspect of the majority opinion.

But the majority goes one step further and requires that the prosecutor make the North Carolina murder statute an exhibit at trial and physically hand the statute to the trial judge before the judge can take judicial notice of it. That mandate presupposes that the trial judge cannot read the North Carolina law himself, which is ludicrous. In addition, there is nothing in the record that says the trial judge did not look at the apposite North Carolina statutes in this case prior to instructing the jury on aggravating circumstances. In short, the majority has seized on an issue for reversal that is pure formality. I would not follow that course. I would remand for resentencing solely due to the error in the trial court's refusal to grant the continuance.